(No. 34490.—

*In re* ABRAHAM TEITELBAUM, Attorney, Respondent.

*Opinion filed May 21, 1958—Rehearing denied June 18, 1958.*

CHARLES LEVITON, of Chicago, *amicus curiae*.

ABRAHAM TEITELBAUM, of Chicago, *pro se.*

Mr. JUSTICE HOUSE delivered the opinion of the court:

The Committee on Inquiry of the Chicago Bar Association filed a complaint against the respondent, Abraham Teitelbaum, with the Committee on Grievances, sitting as commissioners of this court. The charges arose out of his conviction by a jury of income tax evasion in one case and his conviction upon a plea of *nolo contendere* in another. The commissioners recommended that respondent be disbarred. He has filed exceptions to their report and has brought the record here for review.

The first indictment was returned in the United States District Court for the Northern District of Illinois, Eastern Division, on January 22, 1953. It charged the respondent in six counts with violating section 145(b) of the Internal Revenue Code of 1939, (26 U.S.C. sec. 145(b),) by wilfully and knowingly attempting to defeat and evade a large part of the income taxes due from a corporation of which he was president, and individual taxes due from him and his wife for the years 1946 and 1947. Respondent was tried before a jury on January 25, 1956, and found guilty as charged. On October 4, 1956, Judge J. S. Perry adjudged him guilty but suspended the imposition of sentence and placed him on probation for twelve months.

The second indictment in two counts was returned against respondent in the same court on September 27, 1955, for the evasion of income taxes allegedly due from him and his wife for the years 1950 and 1951. On August 29, 1956, respondent withdrew his prior plea of not guilty and filed a plea of *nolo contendere,* whereupon he was committed to the custody of the Attorney General for imprisonment for a period of twelve months, but the execution of

sentence was suspended and he was placed on probation for twelve months.

The Committee introduced certified copies of the indictments and convictions and rested its case. It charged that by reason of the conviction respondent was guilty of misconduct involving moral turpitude, conduct which tends to bring the legal profession into disrepute and conduct unbecoming a member of the legal profession.

Respondent testified that prior to his trial on the first indictment he received an assessment notice setting forth that he owed $340,000 in taxes, interest and penalties, and that he paid that amount in full. He stated his reason for the *nolo contendere* plea to the second indictment was that he was impoverished by his payment of the first assessment and was not financially able to defend. A number of character witnesses testified on respondent's behalf. He then tendered certain documentary proof and made offers of testimony which were denied. The proffered evidence dealt largely with the facts leading up to the indictments and the Committee refused them in evidence on the ground that they tended to go into the merits of the convictions which were conclusive. Respondent asserts that they should have been admitted since they establish that moral turpitude was not involved. The Board of Managers of the Chicago Bar Association did, according to its order, consider the refused evidence only on the question of possible mitigation of the discipline to be recommended. The evidence so offered is in the record and available to this court.

We have adopted and adhered to the rule in disbarment proceedings, that conviction of a crime involving moral turpitude is conclusive evidence of an attorney's guilt and is ground for disbarment. (*In re Needham,* 364 Ill. 65; *In re Carr,* 377 Ill. 140; *In re Pontarelli,* 393 Ill. 310.) Therefore, the primary issue before us is whether moral turpitude is involved in respondent's convictions under section 145(b).

Our attention is directed to the fact that section 145(b) of the Code defined wilful violation thereof as a felony, while wilful violation of section 145(a) is classified as a misdemeanor. The fact that the convictions were for *mala prohibita* rather than *mala in se* offenses is commented upon, leaving the inference that moral turpitude is involved only in the latter. Whether a conviction is for a felony or a misdemeanor, (see *In re Alschuler,* 388 Ill. 492,) or whether the offense was *malum prohibitum* rather than *malum in se* (as in the *Needham* and *Carr cases*), is not the basis for disciplinary action in this State. Rather, the conviction of any crime which involves moral turpitude is *per se* ground for disbarment or other disciplinary action under our rule.

Moral turpitude has often been set up as a test. It can be applied in an infinite variety of situations by legislative enactment as well as judicial decision. It is for this reason that it eludes a precise definition which will cover all cases. Without attempting to limit the meaning of the phrase, we think it elementary that fraud or fraudulent conduct on the part of an attorney resulting in his conviction necessarily carries the connotation of moral turpitude. The case of *In re Needham,* 364 Ill. 65, involved a disbarment proceeding following a conviction for use of the United States mails for the purpose of obtaining money and property of others by means of fraud and false pretenses. We there said, at page 70: "Attempting to obtain the money or property of others by fraud or false pretenses, whether through the use of the mails or otherwise, involves moral turpitude." The Supreme Court of the United States in *Jordan v. De George,* 341 U.S. 223, 95 L. ed. 886, used the following language in regard to this question, at page 227: "Without exception, federal and state courts have held that a crime in which fraud is an ingredient involves moral turpitude." And again, at page 228 it was said: "In the state courts, crimes involving fraud have universally been held

to involve moral turpitude," and the *Needham case* was cited in the footnotes. (L. ed. p. 890.)

*In re Tinkoff,* No. 23356, involved a disbarment proceeding arising out of the conviction of Paysoff Tinkoff for wilfully attempting to defeat and evade the payment of taxes due the government from persons for whom he acted as attorney. He was disbarred by the order of this court, entered without opinion, on June 9, 1937. Respondent argues that there is a distinction in that there Tinkoff acted as counsel for others and here Teitelbaum was acting on his own behalf. This is a distinction without a difference. The fraudulent act of an attorney in his own behalf is no less reprehensible than acting on behalf of a client. In each case he seeks personal gain, directly or indirectly, to the detriment of honesty. (It is interesting to note that the Federal court, while holding that our disbarment order was not conclusive in a proceeding for disbarment in a Federal district court, disbarred him because of his conviction. See *In re Tinkoff,* 101 F.2d 341.)

The record of conviction of respondent is conclusive of his guilt and it has been established in this State that we cannot go behind such record. (*In re Needham,* 364 Ill. 65; *In re Pontarelli,* 393 Ill. 310.) We therefore turn to the record of his convictions to ascertain whether fraudulent conduct was involved.

Section 145(b) reads in part: "Any person * * * who willfully attempts in any manner to evade or defeat any tax imposed by this chapter, or the payment thereof, shall * * * be guilty of a felony * * *." It will be noted that section 145(b) is not specifically couched in terms of fraud but speaks in terms of willful intent to evade. A conviction under the section necessitates a finding that the willful-intent-to-evade element therein was proved. In our view such a finding tends strongly to import fraud in a prosecution thereunder. Furthermore, each of the six counts of the indictment of January 22,

1953, charged that the respondent "did wilfully and knowingly attempt to defeat and evade a large part of the taxes due" by filing a "false and fraudulent" tax return (or income tax return) in violation of section 145(b) of the Internal Revenue Code. The verdict read, "We, the Jury, find that defendant, Abraham Teitelbaum guilty as charged in the indictment." The judgment read, in part: "It is adjudged that the defendant is guilty as charged and convicted." Both counts of the indictment returned on September 27, 1955, made charges in substantially identical language. The judgment on this indictment reads in part: "It is adjudged that the defendant has been convicted upon his plea of nolo contendere * * * (and) it is adjudged that the defendant is guilty as charged and convicted."

Despite the charge of fraud in each of the indictments, respondent did not move to quash but went to trial on one indictment and pleaded *nolo contendere* to another. He now, in effect, seeks to attack the indictments collaterally and have us go behind the convictions. If actual fraud in the commission of an offense involves moral turpitude, and we so hold, then respondent's convictions under unchallenged indictments charging fraud establishes moral turpitude and summary disciplinary action was properly invoked on the records of the convicting court. In order to avoid seeming harshness in this particular case, since we disbarred in the Needham disciplinary action where fraud was both an element of the crime and charged in the indictment, we have examined the proof tendered by respondent to ascertain if it disproves fraud. Actually it confirms a continued course of evasive conduct. The evasion of taxes was not confined to a single instance but was in four separate years, 1946, 1947, 1950 and 1951, and was in substantial amounts. For example, the amount of taxes, exclusive of interest and penalties, due from respondent in the years 1946 and 1947 was in excess of $24,000 and $45,000, respectively, and substantially similar amounts were due from his wife in

the same years. The evidence offered wholly fails to show an absence of fraud.

Respondent cites several cases from foreign jurisdictions in support of his contention that moral turpitude is not involved. The case of *Kentucky State Bar Association* v. *McAfee,* (Ky.) 301 S.W.2d 899, reveals that a copy of the brief filed in the Supreme Court of California in the case of *In re Hallinan,* 43 Cal.2d. 243, 272 P.2d 768, was attached to the respondent's brief and the Kentucky court stated that it "fully covers the question of whether a conviction for failure to file a Federal Income Tax return involves moral turpitude. A reading of this brief convinces us that it does not." The Kentucky case did not involve conviction under section 145(b), but under section 145(a).

*In re Hallinan,* 43 Cal.2d 243, involved a disbarment proceeding for conviction under section 145(b), and the court held that an intent to defraud is not an essential requirement of section 145(b) and that a conviction thereunder does not necessarily involve moral turpitude. A motion to dismiss was denied and the cause was referred to the board of governors for a hearing on the question of whether moral turpitude was involved. Thus, contrary to our procedure, inquiry was extended beyond the conviction. In a second opinion, (*In re Hallinan,* 48 Cal.2d 52, 307 P.2d. 1,) following the hearing ordered, the respondent was suspended. In commenting upon the argument that "moral turpitude is not involved in the evasion of income taxes wherein the offender is penalized for keeping his own money, not for taking someone else's," the following excerpt was quoted from the first *Hallinan* opinion at page 3 : "We see no moral distinction between defrauding an individual and defrauding the government [citation], and an attorney, whose standard of conduct should be one of complete honesty [citation], who is convicted of either offense is not worthy of trust and confidence of his clients, the

courts, or the public \* \* \* since his conviction of such crime would necessarily involve moral turpitude." It appears, therefore, that the California court's view is that summary disciplinary action cannot be taken, but it is noteworthy that, upon facts very similar to those before us, the court found that the conviction did involve moral turpitude.

The last case cited by respondent is *Baker* v. *Miller,* (Ind.) 138 N.E.2d 145, wherein a divided court inferentially overruled a number of previous cases and held that moral turpitude is not necessarily essential to the crime prescribed by section 145(b). Its decision was based upon its interpretation of the law as pronounced by the United States courts. (But see, analysis of Federal cases in *Chanan Din Khan* v. *Barber,* 147 F. Supp. 771.)

The overwhelming weight of authority seems to be that conviction of a crime wherein fraud is an element involves moral turpitude. We are not disposed to change our views hereinbefore expressed.

One of respondent's refused exhibits was a memorandum opinion of United States District Judge Philip L. Sullivan, wherein a petition to strike respondent's name from the rolls of the United States District court was denied. An appeal was taken to the United States Court of Appeals for the Seventh District, and, upon motion, that court dismissed the appeal. Respondent contends that the decisions of those courts should be conclusive as *res judicata.* This contention is without merit. Historically in Illinois, the power to regulate the practice of law has been held to be the prerogative of the judiciary. Just as this court has the inherent right to prescribe rules for the study of law and the admission to practice, (*In re Day,* 181 Ill. 73,) so it has the inherent power to discipline attorneys. (*People ex rel. Moses* v. *Goodrich,* 79 Ill. 148; *People ex rel. Chicago Bar Assn* v. *Czarnecki,* 268 Ill. 278; *People ex rel.*

*Ludens* v. *Harris,* 273 Ill. 413; *In re Roth,* 398 Ill. 131.) The power thus vested in us creates a duty which we cannot, and will not, avoid.

Respondent argues that in the event we hold the foregoing decisions are not *res judicata,* that they should be highly persuasive on the question of moral turpitude. This argument overlooks the fact that the district court's decision is based upon its interpretation of the Federal rule that inquiry into the circumstances of the conviction is permitted, while we do not permit such inquiry. On the other hand, those decisions are entitled to consideration on the question of mitigation, since the court which tried defendant found sufficient extenuating circumstances to refuse disbarment in that court. Judge Sullivan's decision, denying the petition for disbarment, was based largely upon the reasons given by Judge Perry for the suspension of sentences in the criminal cases. The latter commented with reference to the first case, that there was much merit in the fact that payment had been made in full prior to the indictment and apparently was impressed with the change in the Government's policy, theretofore followed, of not prosecuting criminally after a jeopardy assessment had been filed. He stated that he did not believe that respondent was told directly that he would not be prosecuted if he paid the assessment, but that he could believe that the respondent and others were told that where payment had been so made that indictments had never followed. Further, comment was made that the respondent had not concealed any gross income but that his offense was concealing or claiming expenditures never made. Judge Perry's reason for probation in the second case was based on the fact that respondent had suffered a great deal—his loss of practice, and adversities and hardships in connection with his large family. An appeal was taken from Judge Sullivan's decision to the Court of Appeals for the Seventh District, and an opinion

was filed by the court just prior to oral arguments in this cause. A certified copy thereof has been made a part of this record by bench order. The Court of Appeals briefly reviewed the pertinent facts and the action of the district judge. In commenting, it said: "Here the District Court is satisfied to have Teitelbaum's name remain upon the role of attorneys authorized to practice at the bar of that court. The only attempt being made to force the District Court to take a contrary action is by Mr. R. Tieken who happens to be the United States attorney." Again, in granting the motion to dismiss the appeal, the court said: "R. Tieken was not a party to the proceeding below. Actually his status was that of an informer." Thus, while the court refused to review the disbarment proceeding on its merits, the plain language used shows an utter lack of sympathy with the views of Tieken and no disagreement with the holding of the district court.

The commissioners have recommended disbarment because the convictions of respondent involved moral turpitude. We find no fault with their report, since under our decisions the ultimate penalty of disbarment can be invoked. Final responsibility for fixing the punishment, however, rests in this court. After considering the whole record, including the documentary proof and evidence offered, we conclude that there are extenuating circumstances. The Federal court had the advantage of a full and complete hearing. Probation without sentence and sentence with probation were given in separate cases despite respondent's conviction under a statute which declares its violation to be a felony. The same court refused to disbar or otherwise discipline respondent. The Circuit Court of Appeals refused to consider the appeal on its merits, but in extensive comments showed no disagreement with the action of the district court. It is probable that the Federal courts were impressed, as are we, with the fact that indictment and

prosecution followed a jeopardy assessment and payment, contrary to the previous well-known policy of the government in that type of situation.

The respondent deliberately set out to defraud the government of taxes rightfully due through several different returns and must be disciplined. However, under the peculiar circumstances in this case and the action taken by the Federal courts, we are of the opinion that the interests of justice will be served by suspension rather than disbarment. We therefore suspend respondent from the practice of law for a period of three years.

*Respondent suspended.*