The Committee on Legal Ethics of
The West Virginia State Bar

*v.*

Harry Scherr, Jr.

(No. 12439)

Submitted May 4, 1965.                    Decided July 13, 1965.

*Ned H. Ragland,* for complainant.

*Scherr, Meek & Vinson, J. B. Meek,* for defendant.

Berry, Judge:

This is a proceeding to suspend the license of Harry Scherr, Jr. to practice law in the State of West Virginia,

instituted in this Court by the Committee on Legal Ethics of the West Virginia State Bar under the provisions of the By-Laws, Rules, and Regulations of the West Virginia State Bar, approved with amendments thereto by this Court.

It appears from the complaint of the Legal Ethics Committee and papers filed therewith that Harry Scherr, Jr., a member of the West Virginia State Bar, was charged in an information filed in the United States District Court for the Northern District of West Virginia on February 25, 1964 with the failure to file income tax returns for the years 1957, 1958, 1959, 1960 and 1961, each year consisting of a separate count in the information, in violation of Section 7203 of Title 26, United States Code. On April 17, 1964 the said Harry Scherr, Jr., pleaded guilty to counts 1 and 2 of the information charging him with the failure to file income tax returns for the years 1957 and 1958. He was sentenced to pay a fine of $2500.00 on each count, and the said fines were paid in full and counts 3, 4 and 5 were dismissed.

After receiving information with regard to this matter, Ralph L. Miller, the Chairman of the Legal Ethics Committee, wrote a letter to Mr. Scherr on May 21, 1964, stating that in accordance with the By-Laws of the West Virginia State Bar the Committee had made an investigation of the information filed against him in the United States District Court for the Northern District of West Virginia, which resulted in the imposition of a fine against him on two counts of said information, all of which was in violation of Section 7203 of Title 26 of the United States Code. It directed his attention to Chapter 30, Article 2, Section 6 of the West Virginia Code providing for disciplinary action against any attorney convicted of a felony or any other offense involving moral turpitude. It referred to three cases holding that a conviction under this Section of the United States Code warranted disbarment on the grounds of moral turpitude and specifically advised Mr. Scherr that he was charged with having been convicted of an offense involving moral turpitude and that pursuant to provisions of Chapter 30, Article 2, Section 6, he was subject to disciplinary action

as a result thereof. He was also advised that under Section 13 of Article VI of the By-Laws of the West Virginia State Bar he could request a formal hearing of the matter by a written request mailed by registered or certified mail to the Chairman of the Legal Ethics Committee, but it did not direct him to appear before the Committee at a time and place stated therein for an informal hearing as required by Section 12, Article VI of the By-Laws of the West Virginia State Bar; and apparently the notice was not served on him in accordance with the provisions of Section 35 of Article VI of the By-Laws of the State Bar, as required by Section 12 thereof.

On June 4, 1964 Harry Scherr, Jr., wrote to the Chairman of the Legal Ethics Committee stating that he would like to have the opportunity to appear and to be heard on his own behalf. However, it appears from correspondence between Mr. Scherr and his attorney, and the Chairman of the Legal Ethics Committee that no hearing was held on this matter before the Committee and that it was specifically waived by Mr. Scherr and his attorney.

On January 27, 1965, the Legal Ethics Committee under provisions of Section 17, Article VI of the By-Laws and Rules and Regulations of the West Virginia State Bar made a report of its findings and recommendations, sending copies to both the accused and his counsel of record, as well as the president and secretary of the State Bar. The report, after finding that the accused had violated Section 7203 of Title 26, United States Code, by the failure to file income tax returns, had pleaded guilty to counts 1 and 2 of the information filed in connection therewith and had been fined $2500.00 without costs on each count, further found that all the fines, taxes due, and penalties were promptly paid by the accused.

The report of the Committee then found and concluded that the accused was guilty of unethical and unprofessional conduct in that:

> "a. He violated Section 2 of said Article VI of the said By-Laws, Rules, and Regulations of The West Virginia State Bar by the commission of a

criminal offense showing professional unfitness by reason of the convictions heretofore referred to herein;

"b.   That he violated said Section 2 of said Article VI of the By-Laws, etc. of The West Virginia State Bar by the commission of a criminal offense showing moral turpitude by reason of the convictions heretofore referred to herein;

"c.   He violated Canon 29 of the Canons of Legal Ethics promulgated by the Supreme Court of Appeals of West Virginia, in that he did not uphold the honor and maintain the dignity of the profession by reason of the convictions heretofore referred to herein;

"d.   He violated Canon 32 of the Canons of Legal Ethics promulgated by the Supreme Court of Appeals of West Virginia, in failing to obey its injunction to observe statute law as evidenced by the convictions heretofore referred to herein;

"7.   That the aforementioned action of said Harry Scherr, Jr. constitutes good grounds for and warrants disciplinary proceedings, as provided for in said Article VI of said By-Laws, Rules and Regulations of the West Virginia State Bar;

"8.   That said Committee recommends that the license to practice law of the said Harry Scherr, Jr., be suspended for a period of one year."

The recommendation of the Committee, after consideration of all papers filed with the report, was that the matter be submitted to this Court by proper petition for the purpose of suspending the license of the accused to practice law for one year.

It should be pointed out that the letter written to the accused on May 21, 1964 by the Chairman of the Legal Ethics Committee, which was apparently the only notice given to the accused in connection with this matter, did not contain any of the charges which the Committee found him guilty of in its report and later incorporated into its petition to this Court. He was originally specifically charged with having been convicted of an offense involving moral

turpitude under the provisions of Chapter 30, Article 2, Section 6 of the West Virginia Code.

The report made by the Probation Officer to the Judge of the United States District Court for the Northern District was very favorable to the accused and stated that he had a good reputation as a citizen and lawyer, and it also appears from the record otherwise that during this period of time when he failed to file tax returns his mother and father were seriously ill and died soon thereafter, as did his wife also. The only detrimental statements made in the report of the Probation Officer were that the accused drank to excess during this period of time, failed to attend to his business, and lived beyond his means to maintain his community status. The District Judge, after considering the investigation and report of the Probation Officer, imposed a fine on only two counts and specifically stated he would not impose any imprisonment or place Scherr on probation because in his opinion it might be harmful to Scherr and his family in his community. The Judge suggested that Scherr abstain from the use of alcohol and regain his self-respect in his community.

The crime for which the accused in this case was charged and to which he pleaded guilty is a misdemeanor and should be distinguished from the crime provided for in Section 7201 of Title 26, United States Code, for attempt to evade or defeat the payment of taxes, which is a felony and has been held to involve moral turpitude. *In re Foley,* (Mo.) 364 S. W. 2d 1; *In re Teitelbaum,* 13 Ill. 2d 586, 150 N. E. 2d 873; *In re Landon,* (Mo.) 319 S. W. 2d 553. Even in this type of case involving a felony, mitigating circumstances are taken into consideration as a rule and in some cases moral turpitude is not found to be present. *State* v. *Cain,* 19 Wisc. 2d 50, 119 N. W. 2d 391; *Baker* v. *Miller,* (Ind.) 138 N. E. 2d 145, 59 A. L. R. 2d 1393.

The cases are about evenly divided as to moral turpitude being involved in the failure to file income tax returns, the charge involved in the case at bar, but the better reasoned cases hold either directly or by implication that it does not involve moral turpitude. *In re Caughlan,* (Wash.) 379 P.

2d 189; *In re Greiner,* (Wash.) 378 P. 2d 456; *State* v. *Bunge,* 20 Wisc. 2d 493, 122 N. W. 2d 369; *State* v. *Roggensack,* 19 Wisc. 2d 38, 119 N. W. 2d 412; *In re Molthan,* (Wash.) 327 P. 2d 427.

While, as noted above, many cases have definitely held that the failure to file income tax returns either does or does not, as a matter of law, involve moral turpitude, still a third view is held by some courts either directly or by implication, to the effect that even if there is a conviction the circumstances of the particular case must be examined, taking into account intent and mitigating circumstances, in order to determine if moral turpitude is involved; that is, the facts rather than a legal principle control. *In re Hallinan,* 43 Cal. 2d 243, 272 P. 2d 768; *In re Moon,* (Mo.) 310 S. W. 2d 935.

A statement with regard to moral turpitude in connection with this matter is found in 59 A. L. R. 2d at page 1401 in the following language:

> "This crime has been viewed most often as one not necessarily involving moral turpitude. For this reason courts have required some further or independent showing, beyond the bare fact of conviction for income tax evasion, that the particular conduct in question was infected with moral turpitude before they would impose discipline appropriate to misconduct of that degree, or they have recognized that the respondent might show himself to have been free of moral turpitude despite his conviction."

The term "moral turpitude" has been used in the law for centuries. It has been the subject of many decisions by the courts but has never been clearly defined because of the nature of the term. Perhaps the best general definition of the term "moral turpitude" is that it imports an act of baseness, vileness or depravity in the duties which one person owes to another or to society in general, which is contrary to the usual, accepted and customary rule of right and duty which a person should follow. 58 C. J. S. at page 1201. Although offenses against revenue laws have been held to be crimes of moral turpitude, it has also been held

that the attempt to evade the payment of taxes due to the government or any sub-division thereof, while wrong and unlawful, does not involve moral turpitude. 58 C. J. S. at page 1205.

Under the facts and circumstances of the instant case, indicated in the various papers filed with this proceeding in this Court showing mitigating circumstances, we are of the opinion that the accused was not guilty of moral turpitude in the failure to file income tax returns with which he was charged and which he readily admitted. Having thus found that moral turpitude on the part of the accused is not present under the facts and circumstances of this case, it can readily be seen that the accused is not guilty in any manner of the specific charge which he was advised by the Committee was being made in this instance. The charge was contained in the only notice sent to the accused in connection with this matter; to-wit: the letter dated May 21, 1964, signed by the Chairman of the Legal Ethics Committee. This letter stated that the accused was specifically charged with an offense involving moral turpitude and that pursuant to the provisions of Chapter 30, Article 2, Section 6 of the West Virginia Code, he was subject to discipline therefor. Disciplinary action is authorized under the provisions of Code 30-2-6 only in cases where an attorney has been convicted of a felony or of a crime involving moral turpitude. The proof of neither is present in the case at bar.

It should be emphasized that the notice in question given to the accused did not comply with the mandatory requirements of Section 12, Article VI of the By-Laws of the West Virginia State Bar in that it did not advise him of the time and place for his appearance before the Committee, and was not served in the manner provided by the provisions of Section 35 of Article VI of the By-Laws of the State Bar; and although the accused indicated that he desired to appear at a formal hearing, no notice of a formal hearing was ever sent to him as required by Section 14 of Article VI. However, from the action for and on behalf of the accused as indicated in the papers filed in this proceeding, this notice was waived; but such waiver would not apply to the initial

notice required by Section 12 of Article VI which must be given in every case of like nature coming before the Legal Ethics Committee of the State Bar.

When the report of the Committee was filed in accordance with the provisions of Section 17c of Article VI of the By-Laws of the State Bar recommending the suspension of the license of the accused to practice law for a period of one year, the findings and violations did not refer to the specific charge stated in the letter of May 21, 1964. The accused was found guilty of unethical and unprofessional conduct in violation of Section 2, Article VI of the By-Laws by the commission of a criminal offense showing professional unfitness and moral turpitude and guilty of the violation of Canons 29 and 32 of the Canons of Legal Ethics in that he did not uphold the honor and dignity of the profession or observe a statutory law as shown by virtue of his conviction in the United States District Court for the Northern District of West Virginia for the failure to file income tax returns.

In any case where the Canons of Professional Ethics are applicable in a disciplinary action against an attorney the particular Canon or Canons should be specified in the initial complaint and if at any time after the initial complaint or notice has been served on the accused it is ascertained that certain Canons may have been violated, ordinarily new charges should be formalized and contained in a new complaint or notice served on the accused in order to afford him full opportunity to meet such charges. *In re Kamp,* 40 N. J. 588, 194 A. 2d 236.

However, in the case at bar the letter sent to the accused on May 21, 1964 advised him that the Committee was investigating his conviction in the United States District Court for the Northern District of West Virginia for the failure to file income tax returns, in accordance with the By-Laws of the West Virginia State Bar. Then, too, a copy of the report of the Legal Ethics Committee wherein it specifically set out its findings charging the accused with the violation of Section 2, Article VI of the By-Laws of the State Bar and Canons 29 and 32 of the Canons of Professional Ethics was sent to both him and his attorney upon its completion Janu-

ary 27, 1965, and a copy thereof was also served upon the accused with the complaint on March 13, 1965, after being filed in this Court under the provisions of Sections 19 and 20 of Article VI of the By-Laws of the State Bar; and no objection was made by the accused or his attorney to such report and additional charges contained therein. An answer as well as a brief on behalf of the accused was filed but neither contained any objection to the additional charges and merely took the position that there was no violation as charged. Although, in fairness to the accused, he should be informed of any alleged violation of any Canon of Professional Ethics, such requirement has been met in this case by the serving of the report and the waiver on the part of the accused by the failure to make any objection in connection therewith which he had the opportunity to do. Therefore, it would appear that there was no prejudice to the accused in connection with this matter and such matter would fall within the provisions of Section 36 of the By-Laws of the State Bar providing for liberal construction and application of the provisions of the By-Laws.

It has been repeatedly held in cases of this kind that the failure to file income tax returns constitutes professional misconduct which is a violation of Canons 29 and 32. *In re Mahon,* 223 N. Y. S. 2d 338, 15 A. D. 2d 232; *In re O'Connor,* 238 N. Y. S. 2d 87, 18 A. D. 2d 19; *In re Edelbaum,* 197 N. Y. S. 2d 266, 10 A. D. 2d 64; *In re D'Adamo,* 207 N. Y. S. 2d 89, 11 A. D. 2d 378; *In re Levine,* 208 N. Y. S. 2d 119, 12 A. D. 2d 72; *In re Bartle,* 236 N. Y. S. 2d 23, 17 A. D. 2d 471; *In re Landis,* 251 N. Y. S. 2d 139, 21 A. D. 2d 488; *In re Jenkins,* 240 N. Y. S. 2d 805, 19 A. D. 2d 53; *In re Kivlin,* 215 N. Y. S. 2d 21, 13 A. D. 2d 867; *In re Wilson,* 24 N. J. 277, 131 A. 2d 750; *In re Caughlan,* (Wash.) 379 P. 2d 189.

The case of *In re Landis,* 251 N. Y. S. 2d 139, 21 A. D. 2d 488, involved the failure of a distinguished member of the Bar of the State of New York to file income tax returns. He had had a brilliant career in public service and was also a former dean of one of the outstanding law schools in the

United States. He pleaded guilty to all five counts in an information charging him with the failure to file income tax returns. Although it was in effect held that his conduct did not amount to moral turpitude and there was no intent to deceive or defraud, that did not excuse the violations of Canons of Ethics 29 and 32 of the profession and his license to practice law was suspended for a period of one year. He had been fined, sentenced and put on probation by the Federal Court at the time he pleaded guilty to the charge.

Even though we have held that mitigating circumstances are involved in the case presented here and the actions of the accused in this case did not involve moral turpitude, nevertheless, they cannot be condoned because such actions are violative of Sections 29 and 32 of the Code of Professional Ethics, adopted by the American Bar Association and promulgated by this Court in 1947, 128 W. Va. Reports, xvii. *In re Ford's Case*, (N. H.) 149 A. 2d 863, *In re Bartle*, 236 N. Y. S. 2d 23, 17 A. D. 2d 471.

Numerous cases have arisen in America concerning the penalty applicable to an attorney convicted by the Federal authorities of some income tax offense, and we have examined most of them, to a total of about 70, some of which were group cases involving several persons. About the only conclusion that can be reached is that each case depends upon its own circumstances. Bearing in mind the distinction between falsification to evade taxes, a felony, and mere failure to file returns, a misdemeanor, and taking into consideration whether the offender was merely careless or had a dishonest intent, the cases have reached conclusions ranging from no action or mere reprimand to complete disbarment. The tendency, however, for mere failure to file has been suspension for a rather limited time where there are mitigating circumstances.

For the reasons stated herein and considering the good reputation, honesty and integrity of the accused as indicated by the papers filed with this Court, and other circumstances involved in this case, we are of the opinion that a suspension of one month from the practice of his profession in the State of West Virginia is sufficient punishment. We there-

fore suspend his license to practice law in this State for a period of one month from the date of the receipt of the mandate of this Court.

> *License of accused to practice law in West Virginia suspended for a period of one month.*