(No. 39006.—

*In re* HAROLD E. SULLIVAN, Attorney, Respondent.

*Opinion filed Nov. 19, 1965.—Rehearing denied Jan. 24, 1966.*

J. R. CHRISTIANSON, of Chicago, *amicus curiae*.

WILLIAM T. KIRBY, of Chicago, for respondent.

Mr. JUSTICE UNDERWOOD delivered the opinion of the court:

On December 18, 1953, the Committee on Inquiry of the Chicago Bar Association filed a complaint against the respondent, Harold E. Sullivan, predicated upon his conviction in the Federal courts upon a joint indictment charging the Shotwell Manufacturing Company and certain officers thereof, including respondent, violated section 145(b) of the Internal Revenue Code (26 U.S.C.A., sec. 145(b)) by wilfully and knowingly attempting to defeat and evade income taxes upon the corporate income by filing and causing to be filed false and fraudulent income tax returns for the years 1945 and 1946. A sentence of three years imprisonment in a correctional institution and a $2500 fine was imposed upon respondent subject to modification at any time thereafter. Respondent commenced serving this sentence on May 12, 1963, and was released on parole six months later. The Committee on Grievances of the Chicago Bar Association, hearing this complaint as commissioners of this court

pursuant to our Rule 59, considered and denied respondent's motion to dismiss the complaint based upon the pendency of an appeal to the United States Court of Appeals seeking reversal of the conviction in the Federal district court. The commissioners then found that respondent had been convicted of a crime involving moral turpitude and that such conduct tended to bring the profession of law and the courts into disrepute and contempt; that our decision in *In re Needham,* 364 Ill. 65, precluded investigation of the merits of the conviction; and that the respondent, in the event his conviction was affirmed, should be disbarred. This report was transmitted to the Board of Managers of the Chicago Bar Association, likewise sitting as commissioners. That board, on December 9, 1954, after hearing respondent's objections to the report, ordered that action thereon be deferred pending the decision of the reviewing courts on the original conviction.

Following final affirmance in 1963 of respondent's conviction, he requested the Board of Managers to remand the disciplinary proceedings to the Committee on Grievances for further hearing. This request was considered a motion to reopen the proofs to permit respondent to present evidence in mitigation of the degree of discipline to be recommended, and the motion was allowed. Since the record in the Federal criminal case consisted of thousands of pages, counsel for respondent and the committee agreed upon a stipulation as to the matters to be considered in determining the discipline imposed. A summary of the stipulation is essential to an understanding of respondent's position.

During most of the period covered by the indictment respondent and his wife owned about 20% of the stock in Shotwell Manufacturing Company which manufactured candy. During the latter half of 1946 their stock ownership increased to 33%. Respondent had for several years prior to 1946 been a director and general counsel for the company at a retainer of $600 per week. In 1946 he also be-

came executive vice-president at the same remuneration, and handled the company's legal affairs exclusive of income tax matters as to which he was not "knowledgeable." He did not prepare his own income tax returns. Respondent's duties did not include maintenance of the records upon which the company's tax returns were founded, and he neither saw nor filed the tax returns.

During the World War II years 1945 and 1946 the Shotwell Company found candy manufacturing operations difficult as a result of the rationing of sugar, and the shortage of all types of sweetening agents and other materials. The only available unrationed sweetening was corn syrup, for which competition was so vigorous that corn refineries restricted their sale of corn syrup to those customers who supplied them with the corn necessary to its production. The supply of corn, as a result of its purchase by black-marketeers who went out into the country to buy it, largely disappeared from normal commercial markets. Respondent testified that in order to remain in business it was necessary for Shotwell to do as its competitors did—to purchase "black-market" corn in violation of governmental price regulations, and to sell the manufactured candy at over-ceiling prices. It is the income resulting from such sales which formed the basis of the criminal prosecution. That prosecution involved considerable judicial disagreement and several factors claimed by respondent to be relevant here. As later emphasized, we consider their relevancy, if any, restricted to an evaluation of the degree of discipline to be imposed.

Facts relating to its "black-market" income from over-ceiling candy sales and "black-market" payments for corn and materials were disclosed by Shotwell to the government in reliance on the Treasury's then "voluntary disclosure policy." Substantially, that policy consisted of a representation by the Treasury that delinquent taxpayers could escape possible criminal prosecution by disclosing their derelictions to the taxing authorities prior to commencement of any in-

vestigation of them. These facts were subsequently used against the defendants in the prosecution after denial of their motion to suppress them, such denial being based upon the district court's finding that the disclosures were neither timely nor made in good faith. The judgment of the district court entered upon a jury verdict finding defendants guilty was reversed by a divided Court of Appeals (*United States v. Shotwell Manufacturing Company*, (7th cir.), 225 Fed. 2d 394,) which held the disclosure was timely and *bona fide* and subsequent use of such evidence against defendants at their trial was inconsistent with fifth amendment concepts. On *certiorari* to the United States Supreme Court, the Solicitor General moved to remand the proceedings to the district court for further hearing on the suppression issue. This motion was allowed by a divided court (*United States v. The Shotwell Manufacturing Company*, 355 U.S. 233, 78 S. Ct. 245, 2 L. ed. 2d 234) and a full evidentiary hearing thereafter was held by the district court which found that "no honest, *bona fide* voluntary disclosure" had ever been made. The district court further thought the fraud consisted, in the main, not in misrepresentations of Shotwell's excess receipts but in misrepresenting that these were almost entirely offset by payments for the purchase of "black-market" supplies, and apparently believed that most of these receipts "totalling between three and four hundred thousand dollars" had gone into the pockets of Shotwell's officers, including respondent. Finding, therefore, that the voluntary disclosure was not made in good faith, the district court adhered to its original ruling that a *mala fide* disclosure posed no constitutional barrier to subsequent use against defendants in the criminal trial of the evidence so disclosed. The Court of Appeals (7th cir.) thereafter sustained these findings (287 F.2d 667) and upheld the district court's denial of the motion to suppress; a divided United States Supreme Court affirmed. (*Shotwell Manufacturing Company v. United States*, 371 U.S. 341, 83 S. Ct. 448, 9

L. ed. 2d 357). There still remain undecided questions relating to respondent's civil liability for additional income taxes.

While respondent here strenuously argues that discrepancies between the testimony of the government's chief witness on the remand hearing before the district judge and its chief trial witness in the original jury trial indicate serious question as to whether the jury's original verdict was not based on false testimony, (a view shared by the dissenting members of the United States Supreme Court,) the rejection by a majority of that court of this argument and its affirmance of that conviction preclude our consideration thereof. Similarly, while respondent argues that the commissioners' findings are based upon evidence at the supplemental hearing which differed from that before the jury which found respondent guilty, upon evidence not admitted as to Sullivan, upon court findings which were *dicta*, and upon statements in the majority opinion of the United States Supreme Court not concurred in by the dissenting justices, we believe reassessment of the validity of such action by either the commissioners or this court would be improper.

In considering this case, certain propositions must be accepted as settled by our earlier decisions. Among these is the rule that conviction of a crime involving moral turpitude is conclusive evidence of the attorney's guilt and constitutes grounds for disbarment. (*In re Greenberg,* 21 Ill.2d 170, 171; *In re Teitelbaum,* 13 Ill.2d 586, 590; *In re Needham,* 364 Ill. 65, 69.) Similarly settled is the fact that a violation of section 145(b) of the Internal Revenue Code is a crime involving moral turpitude. (*Greenberg, Teitelbaum.*) The commissioners therefore properly refrained from inquiry into the merits of respondent's conviction, and this is no less true because the circumstances of the conviction were somewhat unusual in that disagreement originally existed between the district court and the Court

of Appeals and final affirmance by the United States Supreme Court involved a vigorous dissenting opinion by three members thereof. Our decisions establish that respondent's conviction, *per se*, justifies disciplinary action. It is equally clear, however, that this court has final responsibility for determining the punishment to be imposed (*Teitelbaum,* p. 595; *Greenberg,* p. 172), and considers the facts and circumstances in aggravation or mitigation of each case in an effort to determine an appropriate penalty. In short, disbarment is an appropriate, but not mandatory, form of discipline, and the commissioners' recommendation for its adoption, while persuasive, is not conclusive.

We come then to a consideration of the discipline to be imposed, a determination which involves an appraisal of respondent's actual conduct (*In re Crane,* 23 Ill.2d 398, at 400; *In re Anderson,* 370 Ill. 515, at 522) in addition to the fact of conviction, and properly includes all factors of both an aggravating and mitigating nature.

Properly considered in mitigation are the undisputed or stipulated facts that respondent was admitted to the practice of law in 1921, and his conduct thereafter was never the subject matter of complaint except for the matter now under consideration. His reputation was excellent, and a number of public officials, judges, ministers, attorneys and private citizens testified to this fact. Respondent served honorably during World War II and was wounded therein. His professional career included service as a master in chancery of the Cook County circuit court. No disbarment proceedings have been instituted in the Federal courts.

It is also urged in mitigation that respondent's conviction was not for filing fraudulent returns of personal income, but resulted from the preparation and filing of fraudulent returns of income of the corporation, and that it is undisputed that respondent neither prepared nor saw these returns, nor did his duties include maintenance of the company records upon which the returns were based.

It is further argued in mitigation that disbarment has been refused by us where the government has changed its no-criminal-prosecution policy, after preliminary steps were taken by the taxpayer in reliance thereon, and the taxpayer was subsequently successfully prosecuted. We believe this would be consequential if a good-faith disclosure had been made in reliance upon the governmental policy as originally announced; here the district court expressly found to the contrary. It is further urged that since it is claimed the gross income here was not misrepresented, the fraud occurring in showing false off-setting expenditures, this is less offensive than falsifying receipts. This contention is patently without merit. Whether a fraudulent return is such because known income is omitted or false expenses included is, as we said of an argument in *In re Teitelbaum,* 13 Ill.2d 586, 590, " a distinction without a difference." The fact that respondent has already suffered greatly as a result of his conviction and subsequent imprisonment is appropriate for consideration. It is also established that respondent promptly paid substantially all of the civil liability asserted against him, and that claims for refund thereof were then filed and denied and respondent's suit to secure refund is presently pending in the Federal district court. All other matters urged by respondent in mitigation involve impeachment, to some degree, of the validity of respondent's conviction or question the existence of moral turpitude. We have heretofore held these questions closed to further inquiry by the results of the criminal proceedings.

It is apparent from other of our decisions that the discipline imposed in cases where respondents were convicted of violations of section 145(b) has varied from censure (*In re Crane,* 23 Ill.2d 398) to disbarment (*In re Tinkoff,* No. 23356, not reported,), and that in evaluating the specific conduct of the respondent in such cases, consideration has been given the findings made in the criminal proceedings

by the Federal courts. *In re Teitelbaum*, 13 Ill.2d 586, 594-5; *In re Crane*, 23 Ill.2d 398, 401; *In re Greenberg*, 21 Ill.2d 170, 171-2; see also *In re Revzan*, 33 Ill.2d 197.

The punishment imposed upon respondent was substantial—three years imprisonment, subject to modification at any time thereafter, and a $2,500 fine. Although the finding is vigorously disputed by respondent, the trial judge found that no honest, *bona fide* voluntary disclosure to any government official ever was made by Shotwell or the individual defendants with respect to Shotwell's 1945 and 1946 taxes as contemplated by the voluntary disclosure policy in existence at the time. (*United States* v. *Shotwell Manufacturing Company*, (7th cir.) 287 F.2d 667 at 670, 671.) It is apparent that the trial judge believed the respondent's culpability to be substantial, and that large amounts of cash received from black-market sales were divided between respondent and other corporate officials. The trial judge believed, however, that respondent received a "lesser amount" than other corporate officials, and that amount is still in dispute and as yet undecided. His judgment was affirmed by the Court of Appeals and United States Supreme Court even though the dissenting members of the United States Supreme Court questioned its accuracy.

Membership in our profession is not easily attained nor should it be lightly terminated. Our primary obligation to maintain the standards of the legal profession so that public confidence therein may continue to be warranted must not overlook considerations of fundamental justice to the individual respondent. After a thorough consideration of all of the circumstances, including the excellent reputation respondent bore prior to this conviction, we are of the opinion that suspension from the practice of law for a period of three years is an appropriate form of discipline, and it is so ordered.

*Respondent suspended.*