In The Matter Of Fletcher W. Mann, *An Attorney*

(No. 12663)

Submitted April 25, 1967.     Decided June 6, 1967.

*Sanders, Sanders & Bivens, Joseph M. Sanders, W. O. Bivens, Jr.,* for Fletcher W. Mann.

*John O. Kizer,* for Committee on Legal Ethics of the West Virginia State Bar.

Calhoun, President:

The question presented for decision in this case is whether the license of Fletcher W. Mann to practice law should be annulled or suspended because of his having been convicted of a felony. The manner in which the case came before this Court will be stated subsequently in this opinion.

Article VI, Part E., Sections 23 and 24 of the By-Laws of the West Virginia State Bar, (which hereafter in this opinion may be referred to merely as Section 23 and Section 24), so far as pertinent to this case, are as follows:

"23. Any court in which any attorney shall be convicted of any crime involving moral turpitude or professional unfitness shall, as part of the

judgment of conviction, annul his license to practice law.

"Any court before which any attorney has been qualified, upon proof that he has been convicted —

"(a) Of any crime involving moral turpitude or professional unfitness; * * *

"(b) * * * shall annul his license to practice law.

"24. * * *

"In any proceeding in any court, before which an attorney has been qualified, to suspend or annul the license of any such attorney because of his conviction of any crime or crimes mentioned in section twenty-three or in this section twenty-four, a certified copy of the order or judgment of conviction shall be conclusive evidence of guilt of the crime or crimes of which the attorney has been convicted. A plea or verdict of guilty or a conviction after a plea of nolo contendere shall be deemed to be a conviction within the meaning of this section. * * * The legal ethics committee, the president, or the board may procure and transmit a certified copy of the order or judgment of conviction to any such court before which the attorney has been qualified."

The precise question presented for decision is whether the license to practice law should be annulled or whether it should be merely suspended. In his answer, Fletcher W. Mann contends that the license should be merely suspended for such time as the Court may prescribe, but that it should not be annulled.

Pursuant to the provisions of Section 24 quoted above, the Legal Ethics Committee of the West Virginia State Bar, with a letter dated March 9, 1967, sent to this Court certified copies of the indictment, the plea of *nolo contendere* and the judgment order entered August 16, 1966, in the case of United States of America v. Fletcher W. Mann, Criminal No. 1689, in

the United States District Court for the Southern District of West Virginia. With these documents, the Legal Ethics Committee also sent to this Court a certified copy of the transcript of proceedings before the trial court in connection with Fletcher W. Mann's plea to the indictment, including questions propounded to him by the presiding judge and answers made by him to such questions.

On March 28, 1967, this Court entered an order filing the letter of March 9, 1967, and the papers and documents which had been enclosed therewith by the Legal Ethics Committee. The order directed that a rule be issued, "directed to the said Fletcher W. Mann, returnable before this Court at ten o'clock a.m. on April 25, 1967, to show cause, if any he can, why his license to practice law should not be annulled or suspended." On the return day of the rule, Fletcher W. Mann appeared before the Court by counsel, having filed his answer to the rule on the preceding day, and was granted the right to file a written brief in support of the answer within two weeks thereafter. On the same day, the Legal Ethics Committee appeared by counsel, and demurred to the answer, having previously filed a brief or memorandum in writing. The case was thereupon submitted for decision upon the letter from the Legal Ethics Committee and the documents which had been enclosed therewith; the Court's order of March 28, 1967, directing issuance of the rule to show cause; the answer and the demurrer thereto; briefs of counsel; and remarks made orally by counsel before the Court on the day the rule was made returnable. No disputed question of material fact is presented.

The indictment charges that Fletcher W. Mann violated the provisions of Section 7201, Internal Revenue Code (26 U.S.C. 7201). That statute provides: "Any person who willfully attempts in any manner to evade or defeat any tax imposed by this title or the payment thereof shall * * * be guilty of a felony * * *."

The first count of the indictment relates to income tax for the 1958 calendar year; the second count relates to income tax for the 1959 calendar year; and the third count relates to income tax for the 1960 calendar year. Each of the three counts charges that Fletcher W. Mann "did wilfully and knowingly attempt to evade and defeat a large part of the income tax due and owing by him and his wife to the United States of America * * * by wilfully preparing and causing to be prepared * * * and causing to be filed * * * a false and fraudulent joint income tax return * * *," in violation of the statute referred to above.

The first count of the indictment charges that, for the 1958 calendar year, Fletcher W. Mann filed a joint income tax return in behalf of himself and his wife, reporting a taxable income of $3,704.72 and taxes owing thereon in the amount of $822.61, whereas the proper taxable income was $22,633.63 and the proper tax owing thereon was $6,362.45. The second count of the indictment charges that the joint return for the 1959 calendar year reported a taxable income of $3,927.09 and a tax owing thereon amounting to $880.99, whereas the proper taxable income for that year was $33,030.26 and the proper tax owing thereon was $11,010.70. The third count of the indictment charges that for the 1960 calendar year the joint return reported a taxable income of $10,557.24 and a tax owing thereon amounting to $2,560.88, whereas the actual taxable income for that year was $35,833.46 and the proper tax owing thereon was $12,532.72. The indictment, therefore, charges that, for the three calendar years in question, the defendant prepared and filed joint income tax returns reporting an aggregate taxable income in the amount of $18,189.05, whereas the actual taxable income for those years totaled $91,497.35; and that such returns reported taxes due and owing in the aggregate sum of $4,264.48, whereas the taxes actually due and owing for the calendar years in question totaled $29,905.87.

In the proceedings in the trial court on August 16, 1966, preceding the making and acceptance of a plea to the indictment, the defendant, by counsel, expressed to the court his desire to enter a plea of *nolo contendere* to the three counts. The presiding judge in that connection stated to the defendant: "* * * If your position is that at no time you ever intended to defraud the United States in filing those tax returns, then, under those circumstances, I cannot, under any conditions, accept a plea of nolo contendere, nor could I accept a plea of guilty. * * *" Upon further interrogation, the defendant admitted that he did have "a wrongful intention" as to each of the three years in question. The court thereupon inquired: "And that wrongful intention was an intention to defraud the United States of taxes that were legally due the United States?" To that inquiry, the defendant replied: "Yes, sir."

By an order entered on August 16, 1966, the trial court accepted the plea of *nolo contendere* entered by the defendant, adjudged that "the defendant is accordingly found guilty of the charges in the Indictment," and imposed a sentence of fine and imprisonment pursuant to the plea and consequent conviction. As to the nature and effect of a plea of *nolo contendere,* see *State ex rel. Clark v. Adams,* 144 W. Va. 771, 111 S. E. 2d 336.

In his answer, Fletcher W. Mann admits that he was convicted, as previously stated herein, "of a charge of wilfully attempting to evade federal income taxes * * *", but states that the crime of which he was convicted does not involve moral turpitude; and that, therefore, this Court should not annul the license to practice law but that rather it should merely suspend it.

The answer alleges distressing facts relative to Fletcher W. Mann's seriously impaired physical health and numerous physical ailments from which he suffered at the time he made the income tax returns

in question, all of which conditions of health are alleged to have continued to the time the answer was filed. The answer further alleges that his 91-year old mother is dependent upon him for her support; that she has been an invalid for three years; and that she is totally paralyzed, unconscious and confined to a hospital. The answer further alleges that Fletcher W. Mann's wife suffered a massive heart attack in August, 1964, which required that she cease her employment as a school teacher and which also rendered her unable to perform household work of any kind. The answer also details Fletcher W. Mann's dire financial plight which is alleged to have been caused, at least in part, by expenses incident to the criminal prosecution against him. The answer contains the following allegation: ''Respondent freely admits that he was guilty of the charges contained in said indictment, but says that his only reason for filing said false income tax returns was his interest in, and devotion to, his wife and mother, and his desire to provide for them in the event of his death or disability. Respondent says that the foregoing are extenuating circumstances which should be considered by the Court in determining whether the crime of which respondent was convicted involves moral turpitude.''

While we are deeply sympathetic to Fletcher W. Mann because of his extremely heavy burden of troubles, we cannot agree that matters of this character are proper for consideration on the question whether the offense of which he was convicted is one involving moral turpitude. That question, we believe, must be determined from the nature of the crime itself, rather than upon the basis of facts and circumstances affecting personally the man who stands convicted. Facts alleged in the answer were perhaps proper for the trial court's consideration in determining the character and severity of the sentence. Doubtless such facts were considered in that connection because, in addition to imposition of a fine, the trial court sentenced Fletcher W. Mann to imprisonment for two

years on each of the three counts, such sentences to run concurrently; committed him to the custody of the attorney general for confinement in a "jailtype institution or treatment institution" for a period of two months; and the remainder of the sentence was suspended and Mann was thereafter released on probation for a period of two years. Prior to acceptance of a plea to the indictment, the trial court inquired of Mann whether he was entering his plea of *nolo contendere* because of his physical disability, to which inquiry the defendant replied: "Physical disability doesn't enter into it."

Chapter 44, Acts of the Legislature, Regular Session, 1945 (Code, 1931, 51-1-4a, as amended), declares the inherent rule-making power of this Court and authorizes it from time to time to prescribe, adopt, promulgate and amend rules: defining the practice of law; prescribing a code of ethics governing the conduct of attorneys at law; prescribing a code of judicial ethics; and prescribing procedure for disciplining, suspending and disbarring attorneys at law. The statute provides: "When and as the rules of the court herein authorized shall be prescribed, adopted, and promulgated, all laws and parts of laws that conflict therewith shall be and become of no further force or effect to the extent of such conflict."

Pursuant to its inherent rule-making power, recognized and declared by the legislature in the statute referred to above, the Court, by an order entered March 28, 1947, effective May 1, 1947, promulgated a code of professional ethics; a code of judicial ethics; and a Constitution and By-Laws of the West Virginia State Bar. 128 W. Va. xvii. By an order entered on April 10, 1951, the Court approved the Constitution and the By-Laws of the West Virginia State Bar in an amended form, including the portions of the By-Laws which have been quoted previously in this opinion. Additional amendments were subsequently approved.

It has been made clear by the legislature and by prior decisions of this Court that the legislative branch of government cannot abridge the rule-making power of this Court. Code, 1931, 51-1-4a, as amended; *West Virginia State Bar v. Earley,* 144 W. Va. 504, 109 S. E. 2d 420; *Laxton v. National Grange Mutual Ins. Co.,* 150 W. Va. 598, pt. 1 syl., 148 S. E. 2d 725. To the same effect, see *In re the Matter of Disciplinary Proceedings against Mackay* (Alaska, 1964), 416 P. 2d 823. In the *Earley* case, the Court held that the definition of the practice of law as promulgated by this Court pursuant to its rule-making power supersedes and prevails over statutes in conflict therewith. In the *Laxton* case, the Court held that, in an action on an insurance contract, the Rules of Civil Procedure promulgated by the Court, pursuant to its rule-making power, supersede and prevail over preexisting statutes prescribing pleadings and procedure in actions on insurance contracts. It is apparently recognized by counsel in the instant case, therefore, that we must look to the By-Laws of the West Virginia State Bar for our guidance in deciding this case.

*The Committee on Legal Ethics of the West Virginia State Bar v. Scherr, Jr.,* 149 W. Va. 721, 143 S. E. 2d 141, involved a proceeding to discipline an attorney based on his conviction upon an indictment charging him with failure to file income tax returns for five successive calendar years in violation of Section 7203, Internal Revenue Code, (26 U. S. C. 7203). The Court held that, under the facts and circumstances of that case, the attorney was not guilty of moral turpitude. The attorney's license to pratice law was not annulled, but rather it was merely suspended for a period of one month. The Court distinguished that offense, a misdemeanor, from the offense involved in this case, a felony; and while the question was not directly presented for decision, the Court in its opinion implied that a conviction such as that involved in this case involves ''moral turpitude'' within the meaning of the

pertinent provisions of the By-Laws of the West Virginia State Bar.

Section 23, quoted in part in the early portion of this opinion, provides in clear and unmistakable language that any court before which any attorney has been qualified, upon proof that he has been convicted of any crime involving moral turpitude "shall * * * annul his license to practice law." That language is not only clear in its meaning, but also mandatory in its command. The general rule is that the word "shall", when used in connection with a duty imposed, must be construed as mandatory and excludes the idea of discretion. Black's Law Dictionary (4th Ed.) 1541; 80 C.J.S., Shall, pages 136-137; *Baer v. Gore,* 79 W. Va. 50, 52, 90 S. E. 2d 530, 531; *State ex rel. Staley v. Wayne County Court,* 137 W. Va. 431, 440, 73 S. E. 2d 827, 832; *The Board of Trustees of Policeman's Pension or Relief Fund of the City of Huntington v. The City of Huntington,* 142 W. Va. 217, 246, 96 S. E. 2d 225, 242-43. If, therefore, it is determined that the offense of which Fletcher W. Mann stands convicted is one involving moral turpitude, our duty to annul his license is mandatory, and there is no room for an exercise of a discretion based on facts which are alleged to constitute extenuating circumstances.

The present case must be distinguished from other cases of a similar nature in which courts of other jurisdictions are authorized to consider extenuating circumstances in determining proper disciplinary action against attorneys even in cases involving moral turpitude. See, for instance, *In re Crane, Attorney,* 23 Ill. 2d 398, 178 N.E. 2d 349; *In the Matter of Foley,* 364 S. W. 2d 1 (Mo., 1963).

For judicial definitions of the meaning of the term "moral turpitude", see *Committee on Legal Ethics v. Scherr, Jr.,* 149 W. Va. 721, pt. 2 syl., 143 S. E. 2d 141; 24 Cal. L. Rev. 9, 16 *et seq.,* 58 C.J.S., Moral, page 1200; *Noland v. State Bar of California,* 46 Cal. Rep.

305, 405 P. 2d 129; *In re Alschuler,* 388 Ill. 492, 58 N.E. 563; *State ex rel. Conklin v. Buckingham,* 59 Nev. 36, 84 P. 2d 49. In *Jordan v. De George,* 341 U.S. 223, 71 S. Ct. 703, 95 L. Ed. 886, a case involving a deportation proceeding based on a conviction of a charge of conspiring to defraud the United States of tax on distilled spirits, the Court, in holding that the conviction involved moral turpitude, stated: "In view of these decisions, it can be concluded that fraud has consistently been regarded as such a contaminating component in any crime that American courts have, without exception, included such crimes within the scope of moral turpitude. It is therefore clear, under an unbroken course of judicial decisions, that the crime of conspiring to defraud the United States is a 'crime involving moral turpitude.' " *In re Tietelbaum,* 13 Ill. 2d 586, 150 N. E. 2d 873, involved a proceeding to discipline an attorney on the basis of his conviction of a charge similar to that involved in the instant case. In holding that the conviction was one involving fraud and moral turpitude, the court stated: "The overwhelming weight of authority seems to be that conviction of a crime wherein fraud is an element involves moral turpitude. * * *." To the same effect, see *State ex rel. Nebraska State Bar Assn. v. Stanosheck,* 167 Neb. 192, 92 N. W. 2d 194; *In re Eaton,* 14 Ill. 2d 338, 152 N.E. 2d 850.

*In re Alker,* 398 Pa. 188, 157 A. 2d 749, involved a proceeding to discipline an attorney on the basis of his conviction of a charge similar to that involved in the instant case. In that case the court stated: "Although some courts have concluded that moral turpitude is not necessarily an essential element of prosecution for filing fraudulent returns with intent to cheat the Federal Government of taxes, the weight of authority, and in our opinion the better view, holds to the contrary." We are of the opinion that, by the clear weight of authority, a conviction such as that involved in the instant case is one involving moral turpitude. *In re Tietelbaum,* 13 Ill. 2d 586, 150 N.E. 2d 873; *In re*

*Greenberg,* 21 Ill. 2d 170, 171 N.E. 2d 615; *In re Crane,* 23 Ill. 2d 398, 178 N. E. 2d 349; *In re Foley,* 364 S. W. 2d 1 (Mo., 1963); *In re Seijas,* 52 Wash. 2d 1, 318 P. 2d 961; *In re Bassett,* 240 Ore. 284, 401 P. 2d 33; *Rheb v. Bar Assn. of Baltimore City,* 186 Md. 200, 46 A. 2d 289; *Tseung Chu v. Cornell* (9th Cir., 1957), 247 F. 2d 929, cert. denied, 355 U.S. 892, 78 S. Ct. 265, 2 L. Ed. 2d 190; *In the Matter of Landon,* 319 S. W. 2d 553 (Mo., 1959); *State v. Brodson,* 11 Wis. 2d 124, 103 N. W. 2d 912; *Chanan Din Khan v. Barber* (9th Cir., 1958), 253 F. 2d 547, cert. denied 357 U.S. 920, 78 S. Ct. 1361, 2 L. Ed. 2d 1364; *In re Crosby,* 281 App. Div. 801, 119 N.Y.S. 2d 478; *In the Matter of Madden,* 184 A. 2d 204 (D.C., 1962); *People v. Gibbons,* 403 P. 2d 434 (Colo., 1965); *In re Sullivan,* 33 Ill. 2d 548, 213 N. E. 2d 257; *In re Revzan,* 33 Ill. 2d 197, 210 N. E. 2d 519; *DeMoura v. City of Newark,* 90 N.J. Super. 225, 217 A. 2d 19; *Louisiana State Bar Assn. v. Steiner,* 204 La. 1073, 16 So. 2d 843; *State ex rel. Nebraska State Bar Assn. v. Fitzgerald,* 165 Neb. 212, 85 N.W. 2d 323; *State ex rel. Nebraska State Bar Assn. v. Tibbels,* 167 Neb. 247, 250, 92 N. W. 2d 546, 548; *Costello v. Immigration and Naturalization Service* (2d Cir., 1962), 311 F. 2d 343. In other cases, courts, though holding that moral turpitude is not implied as a necessary element of a conviction such as that involved in the instant case, have held that moral turpitude may be established from the circumstances of the particular case. In re *Hallinan,* 43 Cal. 2d 243, 272 P. 2d 768, 48 Cal. 2d 52, 307 P. 2d 1; *People ex rel. Dunbar v. Fischer,* 132 Colo. 131, 287 P. 2d 973.

On the basis of authorities and precedents previously referred to, we are of the opinion, and accordingly the Court holds, that the conviction of Fletcher W. Mann is one which involves moral turpitude. Our holding in this respect is further fortified, we believe, by the fact that the indictment charges that each of the three joint income tax returns was fraudulent, and by the fact that, at the bar of the trial court, Fletcher W. Mann stated that, in making and filing the joint re-

turns, he did so with the intention of defrauding the United States of taxes which were properly due and owing.

For reasons stated in this opinion, the license of Fletcher W. Mann to practice law is annulled.

*License to practice law annulled.*