In the Matter of Lloyd E. HUMPHREYS.

No. D–3811.

Supreme Court of Texas.

Argued Dec. 1, 1993.

Decided March 30, 1994.

Linda A. Acevedo, Austin, for petitioner.

Lloyd E. Humphreys, Dallas, Lloyd Charles Humphreys, Garland, Lowell S. Jones, Dallas, for respondent.

CORNYN, Justice, delivered the opinion of the Court, joined by PHILLIPS, Chief Justice and GONZALEZ, HIGHTOWER, HECHT, GAMMAGE, ENOCH and SPECTOR, Justices.

Petitioner's motion for rehearing is overruled. We withdraw our opinion of January 5, 1994, and substitute the following opinion.

This is an appeal from a decision of the State Bar of Texas Board of Disciplinary

Appeals ("BODA") dismissing a Disciplinary Action by the State Bar Office of Chief Disciplinary Counsel ("OCDC") seeking to disbar Lloyd Humphreys. Humphreys has been convicted of tax evasion in federal court, and the principal question we decide is whether this is an Intentional Crime involving moral turpitude. We hold that tax evasion is such a crime, and that the Texas Rules of Disciplinary Procedure compel Humphreys's disbarment.

## I

Following a jury trial in the United States District Court for the Northern District of Iowa, Lloyd Humphreys was convicted of the felony offense of willful attempt to evade or defeat a tax, 26 U.S.C. § 7201, for the tax years of 1983, 1984, 1988, and 1989. The jury also found Humphreys guilty of the misdemeanor offense of willful filing of a false tax return. On November 22, 1991, the district court sentenced him to prison for three concurrent terms of six, twelve, and eighteen months, respectively, and to a subsequent three-year term of probation. The United States Court of Appeals for the Eighth Circuit has affirmed the conviction and the sentence.

TEXAS R. DISCIPLINARY P. 8.01 (1992), *reprinted in* TEX.GOV'T CODE ANN., tit. 2, subtit. G, app. A–1 (Vernon Supp.1994) provides:

> When an attorney licensed to practice law in Texas has been convicted of an Intentional Crime or has been placed on probation ... with or without an adjudication of guilt, the Chief Disciplinary Counsel *shall* initiate a Disciplinary Action seeking compulsory discipline pursuant to this part.

(Emphasis added). Following this mandate, the OCDC commenced a Disciplinary Action against Humphreys. TEXAS R. DISCIPLINARY P. 8.02 (1992) states:

> In any Disciplinary Action brought under this part, the record of conviction or order of deferred adjudication is *conclusive evidence* of the attorney's guilt.

(Emphasis added). TEXAS R. DISCIPLINARY P. 8.05 (1992) requires that attorneys convicted of Intentional Crimes be disbarred:

> When an attorney has been convicted of an Intentional Crime, and that conviction has become final, or the attorney has accepted probation with or without an adjudication of guilt for an Intentional Crime, *the attorney shall be disbarred* unless the Board of Disciplinary Appeals, under section 8.06,[1] suspends his or her license to practice law.

(Emphasis added). Nevertheless, BODA dismissed the State Bar's petition against Humphreys on April 22, 1993, following a February 27 hearing. The OCDC requested that BODA provide written findings of fact and conclusions of law, but BODA declined. Pursuant to TEX.R.DISCIPLINARY P. 7.11 (1992), the OCDC appealed BODA's decision directly to this court.

The State Bar argues that BODA had no power to dismiss the Disciplinary Action, and that BODA is required to disbar Humphreys. Humphreys responds with several arguments: (1) that this court is without jurisdiction to hear the State Bar's appeal, (2) that BODA is not required to recognize the record of conviction because the procedures applied in the federal trial would have been defective had they been subject to review under the Texas Code of Criminal Procedure, and (3) that tax evasion is not an "Intentional Crime involving moral turpitude," and therefore he should not be disbarred.

## II

### A

■ In his jurisdictional challenge, Humphreys first argues that the State Bar Commission for Lawyer Discipline is without authority under TEX.R.DISCIPLINARY P. 4.06 (1992) to direct the OCDC to pursue an appeal from a BODA decision. To the contrary, the Commission has authority to exercise "all rights characteristically reposed in a client by the common law of this state,"

---

1. Humphreys's prison sentence precludes Rule 8.06 suspension. Rule 8.06 requires suspension of an attorney's license only if "an attorney's sentence upon conviction of a Serious Crime is *fully probated,* or if an attorney receives probation through *deferred adjudication* in connection with a Serious Crime." Humphreys meets neither of these two conditions, and therefore Rule 8.05 requires that he be disbarred.

including the right to appeal, TEX.R.DISCIPLINARY P. 4.06(A) (1992), and therefore the State Bar has authority to appeal adverse BODA rulings to this court. TEX.R.DISCIPLINARY P. 7.11 (1992). On the same ground, we reject Humphreys's contention that the State Bar is not a "real party in interest."

Humphreys argues that TEX.R.DISCIPLINARY P. 7.08 (1992) gives BODA "final" authority over proceedings before it. We disagree. BODA has authority to "hear and determine" Disciplinary Actions, TEX.R.DISCIPLINARY P. 7.08(D) (1992), subject to review by this court. TEX.R.DISCIPLINARY P. 7.11 (1992).

Nor is this action time-barred by the TEX.R.DISCIPLINARY P. 15.08 (1992) limitations period. Rule 15.08 applies to "allegation[s] of Professional Misconduct ... *except* in cases in which disbarment or suspension is compulsory." (emphasis added) We also hold on the basis of the record before us that the State Bar timely filed its notice of appeal.

■ We also decline to dismiss this appeal for want of a statement of jurisdiction. *See* TEX.R.APP.P. 131(d). Because this appeal "resembles that taken from a trial court to the court of appeals," similar procedures apply, and Rule 131(d) is not applicable. *See State Bar v. Humphreys,* 882 S.W.2d 824, (Tex.1993) (per curiam order).

■ Finally, Humphreys argues that this court may not review the legal conclusions of BODA because an appeal under TEX.R.DISCIPLINARY P. 7.11 (1992) is subject to "substantial evidence" review. This argument fails because questions of law are always subject to *de novo* review. Although the Administrative Procedure Act ("APA"), 73rd Leg., R.S., ch. 268, § 1, 1993 Tex.Sess.Law Serv. 587 (Vernon) (to be codified as TEX.GOV'T CODE ANN. §§ 2001.001—2001.902) (formerly Administrative Procedure and Texas Register Act), technically, does not govern BODA procedures, *see Minnick v. State Bar,* 790 S.W.2d 87 (Tex.App.—Austin 1990, writ denied), the APA sections governing appeals from administrative proceedings are analogous and therefore instructive. *Board of Law Exam. v. Stevens,* 868 S.W.2d 773, 777 (1994). APA § 2001.174(2) provides:

> If the law authorizes review of a decision ... under the substantial evidence rule ... a court ... shall reverse or remand the case for further proceedings if ... the administrative findings, inferences, conclusions, or decisions are: ... (D) affected by other error of law....

Thus, even under the substantial evidence test, we review the legal conclusions of BODA *de novo.* We also disagree with Humphreys's assertion that the State Bar has waived this point by failing to raise a special "point of error, or appeal point that is directed at that limited standard of review." No party need raise a point of error directing this court to the appropriate standard of review under Rule 7.11.

■ We reject Humphreys's constitutional Ex Post Facto and jury trial arguments. The Ex Post Facto Clause, U.S. CONST. art. I, § 9, prohibits laws that criminalize behavior retroactively. *Collins v. Youngblood,* 497 U.S. 37, 41–43, 110 S.Ct. 2715, 2718–20, 111 L.Ed.2d 30 (1990); *see also Selective Serv. Sys. v. Minnesota Pub. Interest Research Group,* 468 U.S. 841, 846– 56, 104 S.Ct. 3348, 3351–57, 82 L.Ed.2d 632 (1984) (explaining the term "Bill of Attainder"). Humphreys's only complaint concerns retroactive application of the disciplinary procedure rules. He does not suggest that BODA has subjected him to criminal punishment or even that the substantive standards for compulsory discipline have changed. BODA's application of different procedural rules did not violate Humphreys's constitutional rights. The right to trial by jury, *see* U.S. CONST. art. III, § 2, amend. VI, amend. VII (none of which apply to Texas attorney discipline actions); TEX. CONST., art. I, § 15 (granting legislature power to "pass such laws as may be needed to regulate the same, and to maintain its purity and efficiency"), is maintained by statute for original disbarment actions "in the accused attorney's county of residence." TEX.GOV'T CODE § 81.077(a) (Vernon Supp.1994). However, a jury trial is not statutorily required in *mandatory* disbarment proceedings, TEX.GOV'T CODE §§ 81.078(b), (c), (d) (Vernon 1988), and the constitutional right to a jury is satisfied so long as the disbarred attorney's conviction was ob-

tained in a court of competent jurisdiction by constitutionally adequate procedures.

**B**

■ Humphreys claims that he should not be disbarred because his federal criminal conviction was tainted by legal error. Specifically, he alleges that one of the jurors serving on the federal panel that convicted Humphreys was not qualified to serve as a juror because of a criminal conviction. Humphreys is correct that a conviction by a Texas criminal court under the circumstances he alleges would be void. TEX.CODE CRIM.PROC. ANN. art. 35.19 (Vernon 1989); *Tweedle v. State*, 153 Tex.Crim. 200, 218 S.W.2d 846 (1949). But Humphreys was not convicted in a Texas court, and we think it sufficient answer to point out the obvious: Texas criminal procedure does not govern federal criminal trials in Iowa.

BODA was required, under TEX.R.DISCI-PLINARY P. 8.02 (1992), to treat the record of conviction as "conclusive evidence" of Humphreys's guilt. Moreover, U.S. CONST. art. 4, § 1, and 28 U.S.C. § 1738, require Texas to extend "full faith and credit" to the judgments of federal trial courts in other states just as Texas must to the decisions of other state courts. *Hancock Nat'l Bank v. Farnum*, 176 U.S. 640, 645, 20 S.Ct. 506, 508, 44 L.Ed. 619 (1900); *see generally Bard v. Charles R. Myers Ins. Agency, Inc.*, 839 S.W.2d 791, 794 (Tex.1992) (holding that Texas is required to extend full faith and credit

to valid judgments from other states). While Texas will not extend full faith and credit to judgments or orders that violate Fourteenth Amendment due process rights, *see Old Wayne Mut. Life Ass'n v. McDonough*, 204 U.S. 8, 23, 27 S.Ct. 236, 241, 51 L.Ed. 345 (1907), Humpheys's conviction involves no due process violation. The Fourteenth Amendment of the United States Constitution[2] guarantees Humphreys those rights "so rooted in the tradition and conscience of our people as to be ranked as fundamental" and thus "implicit in the concept of ordered liberty." *Duncan v. Louisiana*, 391 U.S. 145, 148–50, 88 S.Ct. 1444, 1446–48, 20 L.Ed.2d 491 (1968); *Rochin v. California*, 342 U.S. 165, 169, 72 S.Ct. 205, 208, 96 L.Ed. 183 (1952); *Palko v. Connecticut*, 302 U.S. 319, 325, 58 S.Ct. 149, 152, 82 L.Ed. 288 (1937). For example, persons accused of "a capital, or otherwise infamous" crime are entitled to indictment by a grand jury in a federal prosecution, but the Fourteenth Amendment does not require this procedure at the state level. *Alexander v. Louisiana*, 405 U.S. 625, 633–34, 92 S.Ct. 1221, 1226–27, 31 L.Ed.2d 536 (1972). Likewise, the Seventh Amendment right to a jury trial does not apply to the states. *Alexander v. Virginia*, 413 U.S. 836, 836–37, 93 S.Ct. 2803, 2804, 37 L.Ed.2d 993 (1973). Inasmuch as Humphreys's conviction has been found to meet federal procedural standards, it necessarily satisfies the requirements of the Texas Rules of Disciplinary Procedure.[3]

---

**2.** Humphreys also suggests that Texas should not recognize a conviction obtained with the participation of an unqualified juror because such a conviction violates the Jury Trial Clause, TEX. CONST. art. I, § 15, and the Due Course of Law Clause of the Texas Constitution. TEX. CONST. art. I, § 19. While the Jury Trial Clause employs different terms than the Seventh Amendment of the United States Constitution, *compare* TEX. CONST. art. 1, § 15 ("The right of trial by jury shall *remain inviolate.*") *with* U.S. CONST. amend. VII ("In Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall *be preserved* ") (emphasis added), the right Humphreys asserts has a statutory foundation. TEX.CODE CRIM.PROC.ANN. art. 35.19 (Vernon 1989); *Tweedle v. State*, 218 S.W.2d 846 (Tex.Crim.App.1949). Moreover, the Texas Constitution is irrelevant in this context. The Full Faith and Credit Clause of the United States Constitution, U.S. CONST. art. IV, § 1, as

"the supreme Law of the Land," U.S. CONST. art. VI, cl. 2, is controlling.

**3.** Humphreys argues that we have inconsistently extended full faith and credit to the judgment of the federal court in Iowa, and yet refused to follow *In re Shorter*, 570 A.2d 760 (D.C.1990), which he claims is a decision by a "federal court," in deciding whether tax evasion is a crime of moral turpitude. He also suggests that a finding in the record of conviction that Humphreys was not acting as an attorney when he evaded his taxes precludes compulsory discipline.

In arguing that we should treat the case law of other jurisdictions as binding on the issue of whether tax evasion is an Intentional Crime, Humphreys apparently challenges our choice of law. *See generally Bradford Elec. Light Co. v. Clapper*, 284 U.S. 221, 222–23, 52 S.Ct. 118, 118–19, 76 L.Ed. 254 (1931); *Pacific Ins. Co. v.*

## III

### A

■ Humphreys further argues that his extensive record of community service, his heretofore unblemished record of professional conduct, and the circumstances surrounding his conviction all militate in favor of leniency.[4] The compulsory discipline rules, however, do not distinguish among convicted attorneys except by the nature of their crimes. Collateral matters, such as an attorney's record of service and achievement, or bad acts and character traits not related to the record of conviction, are not at issue.[5] Under TEX.R.DISCIPLINARY P. 8.04 (1992), compulsory discipline for an Intentional Crime turns solely on the validity of the record of conviction, the nature of the sentence, and the factual determination that the Respondent is the same person as the party adjudicated guilty. All attorneys convicted of Intentional Crimes, as defined in TEX.R.DISCIPLINARY P. 1.06 (1992), are subject to mandatory discipline.

*Industrial Accident Comm'n,* 306 U.S. 493, 500–05, 59 S.Ct. 629, 632–34, 83 L.Ed. 940 (1939). He does not explain why the law of the District of Columbia and not Texas law should determine licensure issues involving members of the State Bar of Texas. We note in passing that the District of Columbia Court of Appeals, a state court created under U.S. CONST. art. I, § 8, cl. 17, is not an Article III federal court. In response to the second alleged inconsistency, the compulsory discipline rules apply to any attorney "convicted of an Intentional Crime," TEX.R.DISCIPLINARY P. 8.01, 8.03, 8.04, whether the attorney was acting as an attorney or not.

4. Closely paraphrased, Humphreys's brief states: Lloyd Edwin Humphreys, age 55, has been a lawyer since the age of 23. He graduated from the University of Iowa College of Law Cum Laude and was part of the law review staff. Humphreys was the first person in thirty years to attend law school and play college football. His honors include three Big Ten Championships, two Rose Bowls, three letters, and All Star recognition. He was president of all his graduating classes in college and school. He was the youngest Chairman of the State Bar Committee and editor of the Federal Practice and Procedure Handbook for the Iowa Bar. He was elected to the Iowa Academy of Trial Lawyers which selects its 225 members by membership vote. He has received many civic awards for distinguished service. He also served his country as the first defense counsel in Vietnam, having volunteered in 1965 as a regular Army officer. He has been approved by his church as a candidate for ministry and has completed several courses in seminary.

Humphreys was never disciplined by a state bar in over thirty years of practice.

In 1984, shortly after he was interviewed to run for Congress, the federal prosecutor and the I.R.S. began investigating him. In February, 1987, twelve armed agents raided Humphreys & Associates Law Firm, P.C., where Humphreys and other attorneys officed, with a search warrant. The warrant was issued by a Magistrate who was hired shortly thereafter by his former law firm. The senior partner in this firm was married to Humphreys's ex-wife. [Humphreys alleges the warrant was issued improperly and the search exceeded the scope of the warrant.]

In August 1990, within days of the statute of limitations expiring, the federal prosecutor in Iowa indicted Humphreys for tax evasion in 1983, 1984, and 1985. This was for less than five percent of his gross income and involved tax returns all prepared by a certified professional accountant who had also been his accountant-bookkeeper with an office within the law firm. The I.R.S. Special Agent later testified Humphreys's books of account were "surprisingly accurate."

The Department of Justice Guidelines for Prosecution required at least three consecutive years of tax deficiencies of at least $2,500.00 per year. In order to qualify, the I.R.S. moved income from 1984 to 1985, and included property pledged under security agreements as "barter income" from 1983. It also intentionally misrepresented at least one income item.

5. *See also Supreme Court Comm. on Professional Conduct v. Jones,* 256 Ark. 1106, 509 S.W.2d 294, 295 (1974) ("Another premise upon which much testimony is based is that the conviction was politically motivated. For the purposes of this proceeding we must, and do, accept the jury verdict at face value."); *In re Mann,* 151 W.Va. 644, 154 S.E.2d 860, 863 (1967) ("That question, we believe, must be determined from the crime itself, rather than upon the basis of facts and circumstances affecting personally the [attorney] who stands convicted."); *In re Tinkoff,* 101 F.2d 341 (7th Cir.1938), *cert. denied,* 308 U.S. 552, 60 S.Ct. 99, 84 L.Ed. 464 (1939) ("Respondents answer . . . consisted of allegations of fact, which if true, established that his conviction in the criminal case had been obtained as a result of perjury committed with the knowledge and consent of the [prosecutor]. . . . The District Court properly refused to retry the original criminal case for the purpose of showing that the judgment of that case was wrong. . . . That judgment was an adjudication of the fact that respondent had committed the acts which in law constituted the charged felony . . . and is not subject to collateral attack in a disbarment proceeding. . . .").

**B**

■ TEX.R.DISCIPLINARY P. 1.06(*O*) (1992) defines "Intentional Crime" in relevant part as "any Serious Crime that requires proof of knowledge or intent as an essential element." A conviction under 26 U.S.C. § 7201 requires the government to prove that the defendant has "willfully attempt[ed] ... to evade or defeat a tax" beyond a reasonable doubt. "Willfulness" in this context means voluntary intentional violation of a known duty. *United States v. Daniels*, 617 F.2d 146, 148–49 (5th Cir.1980); *United States v. King*, 616 F.2d 1034, 1039 (8th Cir.), *cert. denied*, 446 U.S. 969, 100 S.Ct. 2950, 64 L.Ed.2d 829 (1980); *United States v. Garber*, 607 F.2d 92, 98 (5th Cir.1979). Thus, a conviction under 26 U.S.C. § 7201 necessarily satisfies the *mens rea* requirement of the definition of Intentional Crime. However, we must still determine whether a willful attempt to evade or defeat a tax is a "Serious Crime" under the Texas Disciplinary Rules.

"Serious Crime," as defined in TEX.R.DIS-CIPLINARY P. 1.06(U) (1992),

> means barratry; any felony involving moral turpitude; any misdemeanor involving theft, embezzlement, or fraudulent or reckless misappropriation of money or other property; or any attempt, conspiracy, or solicitation of another to commit any of the foregoing crimes.

Willful attempt to evade or defeat a tax is a felony punishable by a fine not more than $100,000 or imprisonment not longer than five years. 26 U.S.C. § 7201.

We have held that the question of whether a particular crime involves moral turpitude is a question of law and "is to be determined by a consideration of the nature of the offense as it bears on the attorney's moral fitness to continue in the practice of law." *State Bar v. Heard*, 603 S.W.2d 829, 835 (Tex.1980); *see also* TEX.DISCIPLINARY R.PROF.CONDUCT 8.04 cmt. 4 (1989), *reprinted in* TEX.GOV'T CODE ANN., tit. 2, subtit. G, app. A (Vernon Supp. 1994) (STATE BAR RULES art. X, § 9). Although the comments to the former AMERI-CAN BAR ASSOCIATION MODEL CODE OF PROFES-SIONAL RESPONSIBILITY DR 1-102 (1981), indi-

cated that jurisdictions were split on the question of whether "offenses against the revenue laws" involve moral turpitude, *see* MODEL CODE DR 1–102(A)(2) n. 13, the more recent AMERICAN BAR ASSOCIATION MODEL RULES OF PROFESSIONAL CONDUCT 8.4 cmt. (1992), specifically lists revenue offenses among those that "reflect adversely on fitness to practice law" in its discussion of moral turpitude:

> Many kinds of illegal conduct reflect adversely on fitness to practice law, such as offenses involving fraud and the offense of willful failure to file an income tax return.[6] However, some kinds of offense carry no such implication. Traditionally, the distinction was drawn in terms of offenses involving "moral turpitude." That concept can be construed to include offenses concerning matters of personal morality, such as adultery and comparable offenses, that have no specific connection to fitness for the practice of law. Although a lawyer is personally answerable to the entire criminal law, a lawyer should be professionally answerable only for offenses that indicate lack of those characteristics relevant to law practice.

Tax evasion is not a matter solely concerning "personal morality." Willful attempt to evade or defeat a tax involves intentional conduct, in violation of a known legal duty and in pursuit of personal gain, that effectively defrauds the government and other taxpayers. *Daniels; King, Garber, supra.* As such, it is an offense involving deliberate greed and dishonesty and has a specific connection to a lawyer's fitness to practice.

The overwhelming majority of jurisdictions considering the issue have determined that willful attempt to evade or defeat a tax is a crime involving moral turpitude. *In re Taylor*, 316 Or. 431, 851 P.2d 1138 (1993); *Committee on Legal Ethics of the State Bar v. Boettner*, 188 W.Va. 1, 422 S.E.2d 478 (1992); *Attorney Grievance Comm'n v. Osburn*, 304 Md. 179, 498 A.2d 276 (1985) (disbarred for state tax violations); *In re Wines*, 135 Ariz. 203, 660 P.2d 454 (1983) (defendant charged

---

6. This specific example of attorney misconduct involving the revenue laws is a misdemeanor, as opposed to the felony of willful attempt to evade or defeat a tax. *See* 26 U.S.C. § 7203.

with violating 26 U.S.C. § 7201 and convicted of lesser-included § 7203 offense following plea bargain suspended for misdemeanor involving "moral turpitude."); *State Bar Ass'n v. O'Halloran,* 412 So.2d 523 (La.1982); *In re Grimes,* 414 Mich. 483, 326 N.W.2d 380 (1982) (suspension raised to disbarment); *In re Reardon,* 369 A.2d 666, 667 (Del.1976); *State Bar Ass'n, Inc. v. Agnew,* 271 Md. 543, 318 A.2d 811 (1974) (Attorney disbarred despite record of service: "[W]hen a member of the bar is shown to be willfully dishonest for personal gain by means of fraud, deceit, cheating or like conduct ... disbarment follow[s] as a matter of course."); *Dayton Bar Ass'n v. Carter,* 40 Ohio St.2d 43, 319 N.E.2d 358 (1974) (per curiam); *Supreme Court Comm. on Professional Conduct v. Jones,* 256 Ark. 1106, 509 S.W.2d 294, 295 (1974) ("[W]e reject all contentions that one's guilt of willfully and knowingly attempting to evade or defeat payment of taxes ... does not involve moral turpitude."); *In re Snook,* 94 Idaho 904, 499 P.2d 1260 (1972); *In re Abramson,* 37 A.D.2d 301, 324 N.Y.S.2d 891 (1971); *In re Bosch,* 175 N.W.2d 11 (N.D. 1970); *In re Mann,* 151 W.Va. 644, 154 S.E.2d 860 (1967); *State ex rel. Okla. Bar Ass'n v. Houts,* 420 P.2d 498 (Okla.1966); *In re Foley,* 364 S.W.2d 1 (Mo.1963) (en banc); *In re Alker,* 398 Pa. 188, 157 A.2d 749 (1960); *State v. Brodson,* 11 Wis.2d 124, 103 N.W.2d 912, 195 (1960); *In re Teitelbaum,* 13 Ill.2d 586, 150 N.E.2d 873 (1958); *State ex rel. The Florida Bar v. Evans,* 94 So.2d 730 (Fla. 1957); *In re Seijas,* 52 Wash.2d 1, 318 P.2d 961 (1957). Three other jurisdictions have held that such a violation frequently involves moral turpitude, but does not involve moral turpitude *per se. In re Shorter,* 570 A.2d 760 (D.C.1990) (disbarred); *In re Gibbs,* 256 Ind. 692, 271 N.E.2d 729 (1971) (disbarred); *People ex rel. Dunbar v. Fischer,* 132 Colo. 131, 287 P.2d 973 (1955) (disbarred); *In re Hallinan,* 43 Cal.2d 243, 272 P.2d 768 (1954), *later proceeding, In re Hallinan,* 48 Cal.2d 52, 307 P.2d 1 (1957) (per curiam). No court has held, as Mr. Humphreys asks us to do, that willful attempt to evade or defeat a tax as a matter of law does not involve moral turpitude.

The weight of reason and authority lead us to the conclusion that a violation of 26 U.S.C. § 7201 involves moral turpitude *per se.* The non-*per se* cases uniformly distinguish crimes that involve moral turpitude from those that do not on the basis of vague tests not specifically related to an attorney's fitness to continue in the practice of law. For example, Humphreys cites *In re Hallinan,* 272 P.2d 768; *In re Shorter,* 570 A.2d 760, and *In re McBride,* 602 A.2d 626 (D.C.1992) for the proposition:

> [A] crime involves moral turpitude if "the act denounced offends the generally accepted moral code of mankind." It involves "baseness, vileness, depravity in the private and social duties which man owes to his fellow man or to society in general...."

*See Shorter,* 570 A.2d at 765; *Hallinan,* 272 P.2d at 771. These cases also base their conclusions that tax evasion does not involve moral turpitude *per se* on the argument that "intent to defraud" is not an essential element of tax evasion.

Modern authorities defining moral turpitude have abandoned vague standards such as "the generally accepted moral code of mankind." *See, e.g.,* AMERICAN BAR ASSOCIATION MODEL RULES OF PROFESSIONAL CONDUCT 8.4 cmt. Instead, we have said that crimes involving moral turpitude are "to be [identified] by a consideration of the nature of the offense as it bears on the attorney's moral fitness to continue in the practice of law." *State Bar v. Heard,* 603 S.W.2d 829, 835 (Tex.1980). Generally, moral turpitude is implicated by crimes that involve dishonesty, fraud, deceit, misrepresentation, deliberate violence, or that reflect adversely on a lawyer's honesty, trustworthiness, or fitness as a lawyer in other respects. *See* ABA MODEL RULES 8.4(b), (c). By definition, a violation of 26 U.S.C. § 7201 "involve[s] intentional dishonesty for purposes of personal gain." *See In re Hallinan,* 307 P.2d at 2. It therefore involves moral turpitude *per se.*[7] Ac-

---

7. Not all crimes may be classified according to *per se* rules. If an attorney is convicted of a crime that is not *per se* a crime involving moral turpitude, then the Board of Disciplinary Appeals must determine whether the particular conviction involved an Intentional Crime. *See Turton*

cordingly, we hold that felony tax evasion is an Intentional Crime for disciplinary purposes.

The Board of Disciplinary Appeals determination that felony tax evasion is not an Intentional Crime is erroneous as a matter of law, and is therefore an abuse of discretion. Accordingly, we reverse the order of the Board, and hereby render judgment disbarring Lloyd Humphreys.

DOGGETT, J., concurs in the judgment only.

*v. State Bar of Tex.*, 775 S.W.2d 712, 715–17    (Tex.App.—San Antonio 1989, writ denied).