TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







ON MOTION FOR REHEARING









NO. 03-99-00117-CV







United Copper Industries, Inc. and Texas Natural Resource


Conservation Commission, Appellants




v.




Joe Grissom, Appellee







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 98TH JUDICIAL DISTRICT


NO. 98-06046, HONORABLE MARGARET COOPER, JUDGE PRESIDING







 We withdraw our original opinion and judgment issued February 3, 2000, and
substitute this one in its place.

 This is a suit for judicial review of a Texas Natural Resource Conservation
Commission (the "TNRCC" or "Commission") order granting an air quality permit application
submitted by United Copper Industries, Inc. ("United Copper") and denying Joe Grissom's
request for a preliminary adjudicative hearing on whether Grissom should be entitled to a
contested-case hearing on his challenge to the issuance of the permit in question. Upon judicial
review of the decision, the district court reversed the Commission's order and remanded the cause
to the Commission for a preliminary adjudicative hearing to provide Grissom an opportunity to
present competent evidence in support of his request. United Copper and the Commission appeal
the district court's judgment, citing three independent grounds for reversal. We will affirm.


BACKGROUND


 In 1997, United Copper applied to the Commission for a permit to construct and
operate two copper melting furnaces in Denton, Texas. See Tex. Health & Safety Code Ann.
§ 382.0518 (West Supp. 2000). United Copper intended to use these facilities to produce
commercial grade copper rod that would be used to manufacture electrical wire and cable. In its
application, United Copper identified the types of emissions the furnaces would release into the
environment--primarily copper and lead particulate matter--and attached the results of an "air
dispersion computer model" indicating the maximum ground-level concentrations of the
contaminants that it predicted would result from its operations. After considering the application
and the attached research data, the TNRCC determined that the proposed facilities would not have
any negative impact on the health or property interests of the public in the surrounding area--a
finding that is necessary before the TNRCC may issue an air quality permit. See id.
§ 382.0518(b); 30 Tex. Admin. Code § 116.111(2)(A)(i) (1999). United Copper then alerted the
public of its permit application by publishing a notice in a local newspaper and posting signs
around the proposed construction site as required by statute. See Tex. Health & Safety Code Ann.
§ 382.056 (West Supp. 2000).

 Shortly thereafter, Grissom, who lives within two miles of the proposed facilities,
sent a letter to the TNRCC requesting a hearing on United Copper's permit application. (1) In his
written hearing request, Grissom expressed his concern about the negative effects he anticipated
the facilities would have on his health and the health of his two sons, all of whom suffer from
serious asthmatic conditions. In response to Grissom's letter, United Copper and the
Commission's executive director filed written replies urging the Commission to deny Grissom's
request for a hearing. See 30 Tex. Admin. Code § 55.26(e) (1999) (permitting TNRCC executive
director, Office of Public Interest Council, and permit applicant to submit written responses to
hearing requests). In its response, United Copper maintained that Grissom's request should be
denied because: (1) Grissom did not have standing as an "affected person" to request a contested-case hearing, (2) the hearing request was "unreasonable," and (3) Grissom failed to present any
competent evidence in support of his request. The Commission's executive director, on the other
hand, contended in his response that although Grissom was an affected person based on the factors
set forth in the agency's rules, Grissom's request should nevertheless be denied solely on the
ground that it was "unreasonable." He argued that it was unreasonable because the
uncontroverted evidence United Copper submitted with its application established that the
emissions would probably not negatively affect Grissom, his family, or any other members of the
public. Grissom did not reply to the responses filed by United Copper and the Commission's
executive director, despite notice from the Commission that he was permitted to do so. Nor did
Grissom ever submit any evidence in support of his request.

 Apart from the hearing request itself, the only item filed in support of Grissom's
request was a report issued by the Office of Public Interest Council ("OPIC"), a division of the
Commission that represents the public's interest. Citing its concern for procedural fairness, OPIC
recommended that the TNRCC grant Grissom's request. OPIC reasoned that if the Commission
refused to grant the request, Grissom would be denied due process because he would be denied
an opportunity to prove the merits of his case on the basis of evidence that he had not been given
a fair opportunity to present or refute.

 The Commission gave Grissom and United Copper one month's notice of the public
meeting scheduled to evaluate and act on Grissom's hearing request. The notice stated that
Grissom was free to attend the meeting and might be called upon to answer any questions the
Commission might have; however, the notice provided that this was to be a formal meeting at
which no testimony would be taken. At this meeting and after reviewing Grissom's request and
the responses filed by United Copper, OPIC, and the Commission's executive director, the
Commission denied Grissom's hearing request after concluding that he had not satisfied the
requirements set out in the Commission's rules; it also granted the air quality permit United
Copper needed in order to construct and operate its furnaces.

 Grissom proceeded to file suit in district court, seeking judicial review of the
Commission's decision. (2) Grissom contended that, at the very least, he was entitled to a
preliminary hearing where he would have an opportunity to offer competent evidence in support
of his request. The TNRCC responded with a general denial, and United Copper intervened to
protect its interest in the permit it had been granted. The district court ultimately agreed with
Grissom and decided that the Commission erred in determining that the hearing request was
unreasonable and not supported by competent evidence without first providing Grissom an
opportunity to present his evidence at a preliminary adjudicative hearing. In its final judgment,
the district court reversed the TNRCC's order and remanded the cause to the Commission for a
preliminary hearing at which Grissom would have the opportunity to present competent evidence
in support of his request.

 United Copper and the Commission now appeal the district court's judgment,
maintaining that the Commission properly denied the hearing request because: (1) Grissom did
not have standing as an "affected person" to request a contested-case hearing, (2) the hearing
request was "unreasonable," and (3) Grissom failed to present any competent evidence in support
of his request.


STANDARD OF REVIEW


 Grissom filed his request for a contested-case hearing in accordance with the Texas
Clean Air Act. See Tex. Health & Safety Code Ann. §§ 382.001-.143 (West 1992 & Supp.
2000). Authority to sue the Commission under the Act is found in section 382.032(a), which
provides that "[a] person affected by a ruling, order, decision, or other act of the commission or
of the executive director . . . may appeal the action by filing a petition in a district court of Travis
County." Tex. Health & Safety Code Ann. § 382.032(a) (West Supp. 2000). When judicial
review of a decision is sought, the only issue for the court to decide is "whether the
[Commission's] action is invalid, arbitrary, or unreasonable." Id. § 382.032(e). This Court has
applied this unusual standard of review only once before. See Smith v. Houston Chem. Servs.,
Inc., 872 S.W.2d 252, 257 n.2 (Tex. App.--Austin 1994, writ denied). In Smith, we indicated that
this standard seems to imply the applicability of the scope of review set forth in the Administrative
Procedure Act (the "APA"). See id.; Tex. Gov't Code Ann. § 2001.174 (West 2000). Because
the statutory grounds for reversal in the APA are legal questions subject to de novo review by a
court of appeals, we will treat as a question of law the issue here of whether the Commission's
order was invalid, arbitrary, or unreasonable. See Texas Dep't of Public Safety v. Doyle, 987
S.W.2d 897, 899 (Tex. App.--Fort Worth 1998, no pet.); cf. In re Humphreys, 880 S.W.2d 402,
404 (Tex. 1994).


DISCUSSION

 The issue presented in this appeal is quite narrow. Our review is limited to the
confines of the district court's judgment granting Grissom a preliminary hearing to provide him
an opportunity to offer competent evidence in support of his request. Contrary to what appellants
suggest, the district court did not grant Grissom a contested-case hearing on the merits of his case
against United Copper's application; rather, the district court merely ordered the Commission to
provide Grissom a preliminary hearing where he would have a meaningful opportunity to offer
competent evidence in support of his request. It is this narrow decision that we are called upon
to review. We do not comment on the ultimate issue of whether the Commission should grant
Grissom's request for a contested-case hearing on the merits of his case against United Copper's
permit application. 

 The TNRCC is charged with the duty of administering many of the laws designed
to safeguard this state's environment and conserve its natural resources. This includes the crucial
task of overseeing the regulatory protection of the State's air quality. See Tex. Health & Safety
Code Ann. § 382.011 (West Supp. 2000). The legislature was undoubtedly mindful of the
magnitude of this responsibility when it enacted the Texas Clean Air Act (the "Act"), which
begins:


 The policy of this state and the purpose of this chapter are to safeguard the
state's air resources from pollution by controlling or abating air pollution and
emissions of air contaminants, consistent with the protection of public health,
general welfare, and physical property, including the esthetic enjoyment of air
resources by the public and the maintenance of adequate visibility. 



Id. § 382.002. The legislature mandates that the Act be "vigorously enforced." Id.

 In furtherance of this policy, the Act requires that any person intending to
construct, modify, or operate a facility that may emit air contaminants first apply to the TNRCC
for an air quality permit which must be granted before that person may construct or operate the
facility. See id. §§ 382.051, .0518. Once the application is complete, the applicant must provide
the public with notice of its application. See id. § 382.056. This requirement affords individuals
who may be affected by the grant or denial of the permit a meaningful opportunity to voice their
concerns and participate in the permitting process by requesting a contested-case hearing on the
permit application. 

 Here, United Copper gave the required notice, and Grissom timely responded with
a written request for a hearing on the issue of whether the Commission should grant the permit. 
At the time Grissom submitted his request in 1998, one of the statutes governing the hearing
process provided that "the commission or its delegate shall hold a hearing on the permit
application or permit renewal application before granting the permit or renewal if a person who
may be affected by the emissions . . . requests a hearing within the period set by commission
rule." Act of May 4, 1995, 74th Leg., R.S., ch. 149, § 2, 1995 Tex. Gen. Laws 996, 997 (Tex.
Health & Safety Code Ann. § 382.056(d), since amended by Act of May 30, 1999, 76th Leg.,
R.S., ch. 62, § 11.04(c), ch. 1350, § 5(g), 1999 Tex. Gen. Laws 4570, 4574). Thus, to be
entitled to a hearing, the individual requesting it must be "a person who may be affected" by the
emissions that would result if the permit were granted.

 In its first point of error, United Copper argues that Grissom is not a person who
would be affected by the proposed facility. An affected person is "one who has a personal
justiciable interest related to a legal right, duty, privilege, power, or economic interest affected
by the application." 30 Tex. Admin. Code § 55.29(a) (1999). An interest that is common to
members of the general public does not qualify as a personal justiciable interest. See id. This
standard does not require parties to show that they will ultimately prevail on the merits; it simply
requires them to show that they will potentially suffer harm or have a justiciable interest that will
be affected. See Heat Energy Advanced Tech., Inc. v. West Dallas Coalition for Envtl. Justice,
962 S.W.2d 288, 289 (Tex. App.--Austin 1998, pet. denied) (analyzing identical standard as
articulated in section 5.115(a) of Texas Water Code).

 In support of its contention, United Copper specifically cites two of the six factors
the TNRCC considers in determining whether an individual is an affected person. See 30 Tex.
Admin. Code § 55.29(c)(1)-(6). The first factor demands consideration of "whether a reasonable
relationship exists between the interest claimed and the activity regulated." Id. § 55.29(c)(3). 
The second requires consideration of the "likely impact of the regulated activity on the health,
safety, and use of the property of the person." Id. § 55.29(c)(4). Although United Copper
presumably concedes that the serious health and safety concerns Grissom has raised are reasonably
related to the proposed regulated activity, it argues that Grissom is not an affected person because
United Copper's unrefuted evidence conclusively establishes that Grissom's health, safety, and
property will not be affected. We disagree. 

 Contrary to United Copper's contention, the modeling data (3) provided to the
Commission does not prove that Grissom and his family will not be affected. Rather, the data
merely suggests that Grissom may not be affected to a sufficient degree to entitle him to prevail
in a contested-case hearing on the merits of his case against United Copper's application. United
Copper confuses the preliminary question of whether an individual has standing as an affected
person to request a contested-case hearing with the ultimate question of whether that person will
prevail in a contested-case hearing on the merits. In essence, United Copper suggests that
Grissom should be required to prove that he will prevail in a contested-case hearing just to show
that he has the standing necessary to request such a hearing. We reject this argument here just
as we did in Heat Energy. See 962 S.W.2d at 295. 

 In his hearing request, Grissom raised specific concerns about the possible negative
impacts that the copper plant could have on his health and the health of his family. As stated,
Grissom lives within two miles down-wind of the proposed facility, and he and his sons suffer
from serious asthma. United Copper's own data indicates that the operations will result in
increased levels of lead and copper at the site of Grissom's home and the elementary school one
of his sons attends. Considering Grissom's unique health concerns and his close proximity to the
proposed facility, we conclude that he is more likely than other members of the general public to
be adversely affected by the facility. Although the parties dispute the severity of the impact that
the emissions will have on Grissom and his family, it is clear that the Grissoms will be affected
to some degree. As even the TNRCC's executive director concluded, Grissom and his family
have a personal, justiciable interest affected by United Copper's application, and this interest is
different than that of the general public. (4) Thus, Grissom is a person who may be affected by the
permit as contemplated by the statute and the Commission's rules. We overrule appellants' first
point of error.

 Having concluded that Grissom is an affected person, we next turn to the question
of whether his request was reasonable and supported by competent evidence. Although affected
persons generally are entitled to a hearing upon request, this right is qualified. In certain
circumstances, a hearing request shall not be granted, even if submitted by "a person who may
be affected":


 The Commission shall not hold a hearing if the basis of a request by a
person who may be affected is determined to be unreasonable. Reasons for which
a request for a hearing on a permit amendment, modification, or renewal shall be
considered to be unreasonable include, but are not limited to, an amendment,
modification, or renewal that would not result in an increase in allowable emissions
and would not result in the emission of an air contaminant not previously emitted.



Act of May 4, 1995, 74th Leg., R.S., ch. 149, § 2, 1995 Tex. Gen. Laws 996, 997 (Tex. Health
& Safety Code Ann. § 382.056(d), since amended) (emphasis added). Prior to its amendment in
1999, section 5.115 of the Texas Water Code went even further in qualifying a requestor's right
to a hearing: "The commission is not required to hold a hearing if the commission determines
that the basis of a person's request for a hearing as an affected person is not reasonable or is not
supported by competent evidence." (5) Act of May 28, 1995, 74th Leg., R.S., ch. 882, § 1, 1995
Tex. Gen. Laws 4380, 4381 (Tex. Water Code Ann. § 5.115(a), since amended by Act of May
30, 1999, 76th Leg., R.S., ch. 1350, § 1, 1999 Tex. Gen. Laws 4570); see also 30 Tex. Admin.
Code § 55.27(b)(2) (1999). 

 Citing these two statutory provisions, United Copper and the Commission argue
in their final two points of error that the Commission's decision to deny Grissom's request was
proper because the hearing request was both unreasonable and not supported by competent
evidence. We disagree. After carefully reviewing the facts, we are persuaded that the
Commission's decision was unreasonable because it denied Grissom a meaningful opportunity to
offer evidence in support of his request and a chance to refute the proof offered by United Copper.

 It is undisputed that when Grissom submitted his request, he did not simultaneously
offer any evidence in support of his request. Despite this apparent failure to satisfy the burden
of offering competent evidence in support of his request, Grissom nevertheless argued--and the
district court agreed--that at the very least the Commission should have granted him a preliminary
hearing to provide him an opportunity to offer such evidence. Appellants counter that Grissom
had a sufficient opportunity to offer evidence and that he simply failed to take advantage of this
opportunity. They maintain that Grissom's failure to meet his burden of production resulted from
his own mistake and, furthermore, that his request was unreasonable in light of the evidence
United Copper introduced suggesting that the emissions would not significantly affect the
Grissoms.

 Although appellants' argument appears persuasive on its surface, it ultimately fails
because it erroneously presupposes that Grissom had a meaningful opportunity to present the
necessary evidence. Furthermore, it disregards the confusing nature of the Commission's notices
and the language used in the Commission's own rule governing hearing requests. See 30 Tex.
Admin Code § 55.21(c), (d). While we remain mindful of the statutory provision requiring
Grissom to submit competent evidence in support of his request, we believe that individuals
requesting a hearing should be provided, at the very minimum, a fair and meaningful opportunity
to present such evidence. The fundamental ideals of fairness implicit in the rationale behind
providing public notices and opportunities for hearings demand this much. Basic due process
requires that when a decision maker is called upon to make a decision grounded on evidence, the
parties involved should be provided fair notice and a meaningful opportunity to present their
evidence. Given the facts of this case, we are convinced that because of the lack of clarity of the
Commission's notices and its rule governing hearing requests, Grissom was not provided a
meaningful opportunity to meet his burden of production. (6)

 First, we observe that in the public notice United Copper published following the
submission of its application, Grissom was told that to request a hearing he must submit the
following:


(1) your name (or for a group or association, an official representative), mailing
address, daytime phone number, and fax number, if any; (2) the applicant's name
and permit number; (3) the statement "I/we request a public hearing"; (4) a brief,
specific statement of how and why emissions from the proposed facility would
adversely affect you in any way not common to members of the general public; and
(5) the location of your property relative to the proposed facility.



(Emphasis added.) This notice makes no reference to any evidentiary requirement. Likewise, in
its written response to Grissom's request, the Commission never alluded to any need to offer
evidence, although it acknowledged receiving the request and explained how it would be
reviewed. Next, in a letter sent to Grissom and the other parties interested in United Copper's
permit application, the Commission stated that it would not permit any oral argument or public
comment at its formal meeting and indicated that its decision to grant or deny the hearing request
would be based on "the hearing request, written responses to the hearing request, any written
replies to those responses, and any responses to questions." Again, the Commission never
indicated that its decision might depend upon whether Grissom submitted evidence in support of
his request.

 Finally, TNRCC's own administrative rule governing the submission of hearing
requests does not require those requesting hearings to submit evidence with their requests; it
merely establishes the deadline by which hearing requests must be received and restates the same
requirements set out in the Commission's public notice, including the need to submit a "brief, but
specific, written statement" explaining how the requestor will be affected in a manner not common
to members of the general public. See 30 Tex. Admin. Code § 55.21(c), (d). Grissom satisfied
these requirements. Therefore, based upon the notices in the record and the administrative rules
governing this cause, we hold that the Commission acted unreasonably in not granting Grissom
a preliminary hearing affording him a meaningful opportunity to present evidence. We overrule
appellants' final two points of error.


CONCLUSION


 The Commission's decision to deny Grissom's request without first providing him
an opportunity to present evidence in support of his request, as well as a chance to rebut the
evidence produced by United Copper, was unreasonable. Our holding, however, is a narrow one
and is restricted to the facts of this case. We do not decide the issue of whether the Commission
should ultimately grant Grissom a contested-case hearing on the merits or whether United
Copper's permit application should be granted; those issues can only be decided after Grissom is
provided a preliminary hearing where he will have a meaningful opportunity to offer his own
evidence in support of his request, as well as the chance to rebut the evidence already submitted
by United Copper. Having overruled all of appellants' points of error, we affirm the district
court's judgment.



 

 Mack Kidd, Justice

Before Justices Jones, Kidd and Patterson

Affirmed

Filed: May 18, 2000

Publish

1. Three other concerned residents in the area also filed hearing requests. Although their
hearing requests were also denied, these individuals did not seek judicial review of the TNRCC's
decision. The issue in this appeal is therefore limited to the denial of Grissom's request.
2. Initially, Citizens for Healthy Growth ("Citizens"), a local community action group
interested in protecting the local environment and aligned with Grissom, was also a party at the
district court level. However, the Commission and United Copper filed pleas to the jurisdiction
and successfully argued that Citizens lacked standing to bring suit. The district court granted the
pleas to the jurisdiction and dismissed Citizens' claims, leaving only Grissom's cause of action. 
Citizens chose not to challenge the district court's ruling and is not a party to this appeal.
3. Air dispersion computer modeling is a method commonly used by the TNRCC, the United
States Environmental Protection Agency, and companies applying for air quality permits to
evaluate the possible impacts of emissions on humans and the environment. Air dispersion
computer modeling predicts the maximum ground-level concentrations of air contaminants at
various off-site locations, as would result from a facility's operations in the event the requested
permit were issued.
4. In his written response to the hearing requests filed by Grissom and three of Grissom's
neighbors, the Commission's executive director stated:


 All four of the individuals expressed a personal justiciable interest affected
by the application, specifically concerns relating to air pollution and exacerbated
respiratory illnesses based upon the individuals' proximity to the proposed facility. 
These interests are protected by the Texas Clean Air Act, and are not common to
members of the general public, as required by 30 [Tex. Admin. Code]
§ 55.29(a). . . . Accordingly, all four individuals requesting a hearing appear to
meet the criteria for 'affected person' under § 55.29(c).
5. When the former Texas Air Control Board and Texas Water Commission were merged and
became the Texas Natural Resources Conservation Commission in 1991, the body of statutory law
applicable to the TNRCC remained divided between the Texas Water Code and the Texas Health
and Safety Code. Here, all the parties agree that former section 5.115 of the Texas Water Code
and former section 382.056(d) of the Texas Health and Safety Code both govern Grissom's
hearing request.
6. Although we note that Grissom was pro se at the time he submitted his request, we do not
apply a different standard. See Scoville v. Schaffer, 9 S.W.3d 201, 204 (Tex. App.--San Antonio
1999, no pet.); Bailey v. Rogers, 631 S.W.2d 784, 786 (Tex. App.--Austin 1982, no writ) (both
holding pro se litigants to same standard as litigants represented by licensed counsel).


nt evidence. We overrule
appellants' final two points of error.


CONCLUSION


 The Commission's decision to deny Grissom's request without first providing him
an opportunity to present evidence in support of his request, as well as a chance to rebut the
evidence produced by United Copper, was unreasonable. Our holding, however, is a narrow one
and is restricted to the facts of this case. We do not decide the issue of whether the Commission
should ultimately grant Grissom a contested-case hearing on the merits or whether United
Copper's permit application should be granted; those issues can only be decided after Grissom is
provided a preliminary hearing where he will have a meaningful opportunity to offer his own
evidence in support of his request, as well as the chance to rebut the evid